512 A.2d 1219

COMMONWEALTH of Pennsylvania

v.

Bob Allen CLAPPS, Appellant.

COMMONWEALTH of Pennsylvania

v.

Elmer WEISKERGER, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 31, 1985.

Filed July 17, 1986.

82

Charles P. Gelso, Wilkes-Barre, for appellants.

Robert A. Graci, Assistant District Attorney, Wilkes-Barre, for Com., appellee.

Before CAVANAUGH, McEWEN and CERCONE, JJ.

McEWEN, Judge:

Appellants Clapps and Weiskerger were determined by a jury to be guilty of conspiracy,[1] bribery[2] and violating the Public Officials Ethics Act.[3] Appellant Clapps was sentenced to serve a term of imprisonment of from six months to twenty-three and one-half months to be followed by a one year term of probation. Appellant Weiskerger was sentenced to serve a term of three years probation. We reverse the judgments of sentence and direct that each appellant be granted a new trial.

Both appellants assert in this appeal that the trial court erred in its charge to the jury upon the defense of entrapment. Each of the two appellants provides separate further assertions: appellant Clapps asserts that the uncontradicted evidence in the case established entrapment as a matter of law and that, therefore, he should be discharged; appellant Weiskerger argues that the trial court erred by permitting the prosecutor in his closing argument to comment upon the

1. 18 Pa.C.S. § 903.
2. 18 Pa.C.S. § 4701.
3. 65 P.S. § 403(b).

fact that appellants invoked their constitutional right to remain silent.

The case focuses upon four individuals: Walter Placek, Barbara Placek, his wife, and, of course, the two appellants. The asserted role of each, as revealed by the evidence at trial, may be briefly summarized as follows:

WALTER PLACEK was a member of the Wyoming Area School Board during the years that preceded the general election of November, 1979, and, during the years preceding that election, was a member of the coalition that composed the majority of the School Board. While a member of that majority coalition, both he and his wife found themselves beneficiaries of improved professional opportunities.

BARBARA PLACEK was the wife of Walter Placek and, while he was a member of the majority coalition of the Wyoming Area School Board during the years preceding the general election of November, 1979, she was the recipient of special employment attention at the County of Luzerne senior citizen facility known as Valley Crest Nursing Home. She was granted a two year leave so as to secure a Bachelor's Degree and was thereafter appointed to the newly created position of Director of the Bureau of Aging at the County nursing home. When she was removed from that job by reason of her failure to meet the qualifications for that position, a further job was created at the County nursing home, that of Director of Program Development, and she was appointed to that position.

APPELLANT CLAPPS was a prominent political figure who held a position of leadership in area Democratic affairs, as well as membership upon the Exeter Borough Council.

APPELLANT WEISKERGER, a one-time member of the West Pittston Borough Council, unsuccessful candidate for election to the Wyoming Area School Board, and the treasurer of the local Republican organization, was a political ally of appellant Clapps.

The scenario which produced the charges we here review commenced with the general election of November, 1979, when four individuals aligned with appellant Clapps were elected to membership upon the nine member Wyoming Area School Board. The Clapps faction, if it was to compose a majority of the board, required, of course, the allegiance of a fifth member of the board. Placek asserted that appellant Weiskerger communicated with him on January 13, 1980, to determine whether Placek was interested in joining the Clapps coalition so that it would compose the majority on the school board. Appellant Weiskerger, during that discussion, left Placek with the impression that appellant Clapps, in return, might be able to provide job security for Mrs. Placek whose position was likely to be eliminated by reason of budgetary reductions which had caused the discharge of a number of employees at the county nursing facility. Placek testified that, as a result of that discussion with appellant Weiskerger, he contacted, two days later on January 15, 1980, the Federal Bureau of Investigation of the United States Department of Justice. As a result, Placek, in league with the FBI and through the use of FBI eavesdropping equipment, produced the evidence which resulted in the charges and convictions which are the subject of this appeal.

Once Placek had agreed to become their agent, the FBI, on January 17, 1980, installed wiretap equipment on the telephone in the Placek residence and from that date, for the next ten weeks, through March 25, 1980, recorded the many attempts by Placek to communicate with their targets by telephone. In addition, when Placek was to meet with appellants on March 24, 1980, the FBI equipped Placek with such electronic devices as would enable the FBI to eavesdrop upon and record all of the discussions between Placek and his associates, the appellants. All of the conversations recorded, whether by telephone interception or by the equipment worn by Placek, were transcribed so that the jury could follow the discussions while the tapes of the conversations were played for them by the prosecution. The testi-

mony of Placek and the FBI recordings led the jury to determine that appellants were guilty as charged. Appellants do not urge that the evidence was insufficient to sustain the verdict, but instead assert the charges should be dismissed because Placek and the FBI solicited and induced the activity with which they are charged.

While appellants did not themselves testify, they undertook the presentation of the defense of entrapment by vigorous cross-examination of Placek, and by focus upon the enthusiastic manner in which Placek served the FBI, such as, for example, the fact that, within five days, he urged appellant Weiskerger on twenty different occasions to have appellant Clapps contact him. A collateral attack upon the prosecution was the effort of appellants to portray Placek as an unworthy individual who had used his vote to extract spoils from the system and only commenced the investigation to intimidate and coerce the county officials into preserving the position of his wife.

Our appellate role restricts our focus to the narrow legal issues that are presented to us. We may not be diverted by the asserted unworthiness of the individual who enlisted the FBI for the purpose of this prosecution. The use by political leaders of hostages to exercise political influence, manipulation and control is an ancient—and, in the present age, dishonored—practice which has, fortunately, in recent decades, been in decline. Such conduct as the prosecution here charges can only serve to erode the confidence of the people in their government and deserves, when properly uncovered, elimination and punishment. Appellants argue, however, that it was not uncovered in a proper and lawful fashion. Appellants assert that such chicanery as was practiced here is not such dread evil as would justify misuse of the federal police power that modern devices have made awesome, if not frightening. The record does not reflect the basis for the decision of the federal police to conduct the investigation without the assistance and coordination of county and state police agencies, but such usurpation by the federal police is not unusual and may not form any basis for

defense. Nor may the assertion that the thrill of association with the federal police impelled their recruit to perform as a zealot—although, if there is to be the presumption that the FBI did not direct Placek to attempt to contact his quarry twenty times in five days, the question remains as to why the FBI did not maintain more effective control of their undercover agent. History has demonstrated that the performance of the centurion is more frequently witnessed in the excess. In the present time, legal philosophers express concern at the routine that finds the federal police initially targeting their prey, and then either luring or intimidating cohorts of their quarry to become informers and to conceal upon their person equipment that will broadcast conversations which, sooner than later if the agent/informant is to well serve his new masters, must include discussion of illegal activity. We need not here render judgment upon the validity of this concern nor give ear to advocacy that is more essentially the subject of a jury speech.

As we have noted, both appellants assert that the trial court erred in its instruction to the jury upon the defense of entrapment. There is, however, a threshold issue we must first address, namely, the contention of the Commonwealth that appellants were not entitled to any instructions upon entrapment because appellants did not admit to any of the elements of the offenses charged. Thus, the argument goes, any instruction upon entrapment was an unwarranted benefit to appellants and cannot constitute error. The prosecution relies for its position upon the ruling of this Court in *Commonwealth v. McGuire*, 339 Pa.Super. 320, 488 A.2d 1144 (1985). The defendant there testified on his own behalf and acknowledged that he had, at the insistence of undercover police, delivered a package which contained drugs, but denied that he had the requisite intent for guilt because he did not know the contents of the package. Thus, there was evidence to support either (1) the finding that the defendant lacked the requisite intent, or (2) the finding that the defendant was entrapped. As a result, the defendant was entitled to have the issue of entrapment

submitted to and decided by the jury by reason of our ruling that "[t]he entrapment defense will be available to defendants ... who admit to at least some of the elements charged". *Id.* 339 Pa.Super. at 333, 488 A.2d at 1151.[4] The Commonwealth quite adeptly seizes upon that ruling to urge that the entrapment defense is not available to appellants, who entered pleas of not guilty, because, by reason of their failure to testify, they had not met the *McGuire* requirement of admission of "at least some of the elements charged". *Id.*

Thus, we are confronted with the question of whether an accused, who has exercised his privilege not to testify, but who has contested each element of the offense charged by a plea of not guilty, by cross-examination of prosecution witnesses, by the presentation of defense witnesses, and in argument to the jury, is entitled to have the court instruct the jury upon the defense of entrapment. While the courts which have addressed this issue are divided, a majority have held that the entrapment defense is available to such an accused, provided that the accused has not presented any evidence that is inconsistent with the defense of entrapment. *U.S. v. Henry,* 749 F.2d 203, 210–211 (5th Cir.1984); *U.S. v. Groessel,* 440 F.2d 602, 605 (5th Cir.1971); *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *U.S. v. Valencia,* 645 F.2d 1158, 1172 (2nd Cir.1980); *People v. Pagliuca,* 119 Ill.App.3d 906, 913, 76 Ill.Dec. 254, 261, 458 N.E.2d 908, 915–916 (1983); *Ransom v. State,* 630 S.W.2d 904, 906 n. 2 (Tex.App.1982). *See U.S. v. Stanley,* 765 F.2d 1224, 1232–1233 (5th Cir.1985); *U.S. v. Demma,* 523 F.2d 981, 984–985 (9th Cir.1975) ("inconsistency theory" does not apply where defendant does not take the stand because he has not denied the crime.) *But cf U.S. v. Whitley,* 734 F.2d 1129, 1139 (6th Cir.1984) (non-testifying

---

4. The requirement that a defendant admit at least some of the elements of the offense charged stems from the theory that it is inconsistent for an accused to take the stand and deny the commission of the crime and then assert a right to a charge on entrapment. *See Commonwealth v. McGuire, supra,* 339 Pa.Superior Ct. at 330, 488 A.2d at 1150. *See also U.S. v. Annese,* 631 F.2d 1041, 1047 (1st Cir.1980).

defendant must admit guilt to urge entrapment); *State v. Nilsen*, 134 Ariz. 431, 432, 657 P.2d 419, 420 (1983) (where defendant does not testify he still must admit to elements of offense by stipulation or in other affirmative manner).

We are of a mind that the majority view is the preferable position. Nor is it inconsistent with our decision in *McGuire*, or with the notion of entrapment as it exists in this Commonwealth. We, therefore, hold that an accused, who fails to testify in his own defense and does not otherwise offer testimony inconsistent with his assertion of entrapment, is entitled to raise the defense of entrapment, provided, of course, there is some valid basis for the assertion of entrapment. "Any other holding would 'raise a serious Fifth Amendment question'". *U.S. v. Henry, supra*, 749 F.2d at 1011, *quoting U.S. v. Annese, supra*, 631 F.2d at 1047. Since all of the prerequisites for the rule we here announce are present, namely, (1) there is some evidence to support the assertion that entrapment occurred, and (2) appellants did not themselves testify or otherwise offer evidence or testimony inconsistent with an entrapment defense, appellants were entitled to have the court deliver an instruction to the jury upon the defense of entrapment.

We are now able to proceed to a consideration of the claim of appellants that the trial judge delivered to the jury an erroneous instruction upon the defense of entrapment. In ages past, the presentation of the defense of entrapment called for focus upon and scrutiny of the predisposition of the accused to commit the crime charged—a process that became known as the "subjective" standard because it did not focus at all upon the tactics and conduct of the police, but solely upon the character of the accused, a focus that would, of course, provide reflections that would vary with each individual. The "subjective" standard was renounced by our legislature when, in 1972, it adopted the "objective" test by enactment of the Crimes Code, Act of

December 6, 1972 P.L. 1482, No. 334, § 1, effective June 6, 1973, 18 Pa.C.S. § 313,[5] and decreed that the test for determining whether an accused was entrapped was whether the conduct of the police offended the factfinders' sense of justice. *Commonwealth v. Jensch,* 348 Pa.Super. 142, 145, 501 A.2d 687, 689 (1985); *Commonwealth v. McGuire, supra* 339 Pa.Super. at 326, 485 A.2d at 1148; *Commonwealth v. Thompson,* 335 Pa.Super. 332, 339, 484 A.2d 159, 163 (1984); *Commonwealth v. Taylor,* 299 Pa.Super. 113, 119, 445 A.2d 174, 177 (1982); *Commonwealth v. Danko,* 281 Pa.Super. 97, 100, 421 A.2d 1165, 1167 (1980); *Commonwealth v. Stokes,* 264 Pa.Super. 515, 518, 400 A.2d 204, 206 (1979); *Commonwealth v. Manley,* 252 Pa.Super. 77, 86, 380 A.2d 1290, 1294 (1977), *vacated on other grounds,* 491 Pa. 461, 421 A.2d 636, (1980); *Commonwealth v. Jones,* 242 Pa.Super. 303, 311, 363 A.2d 1281, 1285 (1976). *See Smith v. Pennsylvania State Horse Racing Commission,* 92 Pa.Cmwlth. 472, 474, 501 A.2d 303, 305 (1985). Thus, it was error for the trial court to use the "subjective" standard in the instruction to the jury upon the defense of entrapment. We hasten to emphasize that it is only the more recent opinions upon this issue that have clarified the test to be used when the defense of entrapment under 18

5. **18 Pa.C.S. § 313. Entrapment**

(a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) **Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

(c) **Exception.**—The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.

Pa.C.S. § 313, is applicable,[6] and that the trial court did not have the benefit of those rulings and the certainty brought to this issue by their holdings. In any event, the judgment of sentence imposed upon the appellants must be reversed and a new trial granted them.

Appellant Clapps further asserts that all of the evidence in the case, including, of course, the prolonged ten week operation, as well as the intensive efforts of Placek, on behalf of and at the direction of his FBI mentors, to trigger discussion of trading his vote for the job of his wife, establishes entrapment as a matter of law. The end does not justify the means, urges appellant, nor does the invidious invite the insidious. Appellant Clapps relies upon the incessant manner in which Placek urged appellant Weiskerger to arrange a meeting with Clapps for Placek and asserts (1) that all discussions followed the revelation by Placek that his vote was for sale, (2) that Placek admitted that he encouraged appellants to come to a decision to bribe him, (3) that Placek insisted that the control of the school board by the Clapps faction would be more advisedly accomplished by the acquisition of the Placek vote than by waiting sixteen months until the next school board election to secure a fifth vote, and (4) that Placek admitted that appellant Clapps never promised Mrs. Placek continued county employment. The Commonwealth, on the other hand, argues that the conversations between Placek and appellants establish with certainty that it was appellants and not Placek who initiated discussions upon the exchange of the vote for the job.

▇▇▇▇ It is well established that the determination of whether police conduct constitutes entrapment is a question for the jury, unless the evidence clearly establishes entrapment as a matter of law. *Commonwealth v. Thompson, supra* 335 Pa.Super. 332, 484 A.2d 159 (1984). When all of

6. In *Commonwealth v. Thompson, supra* 335 Pa.Super. at 342, 484 A.2d at 165 n. 10, this Court acknowledged that some confusion had existed concerning whether the "subjective" or "objective" test was to be used when dealing with 18 Pa.C.S. § 313.

the evidence enables but one conclusion, namely, that the police induced the commission of the crimes, the conclusion of entrapment may be reached as a matter of law but, otherwise, the question of whether entrapment occurred must be submitted to the jury. *Commonwealth v. Manley, supra* 252 Pa.Super. at 86, 380 A.2d at 1294. The state police conduct in *Thompson* was, of course, so flagrant that entrapment was clearly established as a matter of law since the accused there was a male, middle aged, uniformed, local police officer who was essentially seduced by an undercover state trooper who was female, young, attractive and blonde. The accused local officer and the undercover agent were social companions over a ten month period and had engaged in gestures of endearment. When her continual chiding of the local officer about his failure to secure drugs for her, and his romantic interest in pleasing her made him desperate, he succumbed and obtained a small quantity of marijuana for her. Our eminent colleague, Judge Frank J. Montemuro, Jr., writing for this Court said:

> [T]he use of a young, blond female to coax a middle aged male after months of kissing and socializing, into committing a minor crime is not police conduct which presents the 'mere opportunity' to commit a crime. As this case clearly shows, opportunity and inducement are two separate consequences of police activity. The latter occurred here.

*Id.* 335 Pa.Super. at 344, 484 A.2d at 166. The facts of the instant case do not, however, reveal such inducement. Rather, our study of the record compels the conclusion that the trial court properly submitted the question of entrapment to the jury since the evidence in this case does not require the conclusion that the police induced the crime. A most significant factor in reaching that conclusion is the fact that the federal police did not commence participation in the operation until Placek brought to them the assertion that appellants would trade upon the employment of his wife to secure his vote. Accordingly, we may not accept the assertion of appellant Clapps that the evidence estab-

lished entrapment as a matter of law, and again leave for the finder of facts on remand the determination of whether entrapment occurred.

Our order that a new trial may be held makes it unnecessary for us to address the further assertion of appellant Weiskerger that the prosecutor in closing argument expressed remarks that composed improper comment upon the decision of appellant Weiskerger not to testify in his defense at the trial. The Commonwealth responds that the remarks of the prosecutor were triggered by contentions that had been presented during closing argument by defense counsel. It would not be purposeful to here recount the text of the closing jury arguments of the adversaries which underlie their assertions to us. Perhaps, however, since the case is to be tried anew, it would be prudent to observe that, as abundant as the prosecutor may view his justification, the privilege against self incrimination is so sacred and the prohibition against comment so certain that such remarks as were here made could well have jeopardized the conviction.

The judgment of sentence imposed upon each appellant is reversed. New trial granted. Jurisdiction relinquished.