516 A.2d 64

COMMONWEALTH of Pennsylvania, Appellee,

v.

Patrick FRANK, Appellant.

Superior Court of Pennsylvania.

Argued June 24, 1986.

Filed Oct. 9, 1986.

Arthur L. Goldberg, Harrisburg, for appellant.

John E. Feather, Jr., Assistant District Attorney, Lebanon, for Com.

Before WIEAND, BECK and WATKINS, JJ.

WIEAND, Judge:

Dr. Patrick J. Frank was tried by jury and was found guilty on three counts of unlawfully dispensing a controlled substance. On direct appeal from the judgment of sentence, he argues (1) that he was entrapped as a matter of law and (2) that the trial court should have suppressed electronic recordings of conversations between him and the undercover agent to whom the drugs were dispensed. These arguments are lacking in merit; therefore, we affirm the judgment of sentence.[1]

On July 20, 1984, Jeanne R. Berlin, an undercover agent employed by the Bureau of Narcotic Investigation and Drug Control,[2] arrived at the office of Dr. Frank pursuant to appointment. Using the name Diane Winters, she told Dr.

---

**1.** Dr. Frank was sentenced to pay fines in the total amount of $4,500.00 and was placed on probation for twenty-three months. He was also directed to make restitution in the amount of $123.37 and perform one hundred (100) hours of community service.

**2.** The Bureau is a part of and is operated from the Office of the Attorney General of Pennsylvania.

Frank that she wanted to lose weight. After conducting a physical examination, Dr. Frank dispensed medication. One type was to be used during the day and another type was intended for use at night.

On August 24, 1984, Agent Berlin again went to Dr. Frank's office. She told Dr. Frank that she had not been taking the nighttime medicine because she had not needed it. She said that her boyfriend had taken this medication and liked it. Berlin asked Dr. Frank for a supply of medication for her boyfriend. Dr. Frank responded that he could not lawfully prescribe medication for her boyfriend without examining him physically, but that he could prescribe medication for her and she could give it to her boyfriend. He then gave her additional medication.

On September 14, 1984, Agent Berlin again went to Dr. Frank's office. This time she was wearing an electronic device which enabled her conversation with Dr. Frank to be recorded. Once again she told Dr. Frank that she was not using the nighttime medicine but that her boyfriend was continuing to take it. Dr. Frank again responded that he could get into trouble if he dispensed medication for his patient's boyfriend, but that he would continue to provide medication for her and she could give it to her boyfriend. He gave her additional medicine.

Again, on October 2, 1984, Berlin went to Dr. Frank's office while wearing a recording device. She told Dr. Frank that she wanted more of the nighttime medication for her boyfriend and asked him if he could make the medication stronger. Dr. Frank responded that he would not give the medication to her boyfriend but he would give it to her and she could give it to anyone she wanted to give it to. He gave her a different kind of medication.

On October 12, 1984, still posing as Diane Winters, Agent Berlin went to Dr. Frank's office for the last time. She told Dr. Frank that she had not come to discuss weight control, but only to get more nighttime medication for her boyfriend. Again Dr. Frank suggested that he could get into trouble if he gave her more medication for her boyfriend.

He asked her to have her boyfriend make an appointment so that he could give the boyfriend a physical examination and find a reason for the medication. Nevertheless, he gave Berlin a small amount of the nighttime medication and instructed her that if she were questioned by anyone, she should say that she had lost the medication previously given to her and that she had been given a physical examination before receiving the medication. This conversation was also recorded.

Appellant was charged in four complaints with having unlawfully dispensed controlled substances, i.e., Sodium Pentobarbital and Butabarbital, in violation of the Controlled Substance, Drug, Device and Cosmetic Act of 1972, P.L. 233, § 13(14), 35 P.S. § 780–113(14). He defended on grounds that he had been entrapped. The issue of entrapment was submitted to the jury with instructions which the defendant has not challenged. The jury decided the issue of entrapment against Dr. Frank and found him guilty on three of the four charges.

The defense of entrapment is defined at 18 Pa.C.S. § 313 as follows:

> **(a) General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
>
> (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b) Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

"The test for entrapment in Pennsylvania under section 313 is an objective one which 'focus[es] on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit the crime.'" *Commonwealth v. Thompson*, 335 Pa.Super. 332, 340, 484 A.2d 159, 163 (1984), quoting *Commonwealth v. Jones*, 242 Pa.Super. 303, 311, 363 A.2d 1281, 1285 (1976). See also: *Commonwealth v. Clapps*, 355 Pa.Super. 80, 90–91, 512 A.2d 1219, 1224–1225 (1986).

In its effort to deter governmental conduct which "induces or encourages" citizens to commit crimes, the Legislature has defined improper conduct in two ways. Should law enforcement agents misrepresent the nature of the conduct encouraged, such that civilians are induced to believe that the encouraged behavior is lawful, an entrapment will have been perpetrated for purposes of § 313(a)(1)....

Entrapment is also defined as the use of "methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it." § 313(a)(2). Again, a particular defendant's attitude is not relevant; he need not prove that he was not "ready to commit" the crime. Rather, he must establish by a preponderance of the evidence that the methods of persuasion directed toward him, if utilized again, present a substantial risk that otherwise honest, law-abiding citizens may at some time be ensnared.

As the statutory definitions reveal, then, Pennsylvania's entrapment statute addresses the concern over "unconventional" investigatory methods, and the **potentialities** inherent in these overreaching tactics. As such, the analysis only incidentally involves a particular defendant. *Commonwealth v. McGuire*, 339 Pa.Super. 320, 328, 488 A.2d 1144, 1148–1149 (1985) (footnote omitted) (emphasis in original). "[T]he case law has been consistent in Pennsylvania in holding that the determination of whether police conduct constitutes entrapment is for the jury, unless the

evidence of police conduct clearly establishes entrapment as a matter of law." *Commonwealth v. Thompson, supra,* 335 Pa.Super. at 340–341, 484 A.2d at 164. Unless the evidence enables but one conclusion, namely, that the police induced the commission of the crimes by improper means, as defined by the statute, the question of whether entrapment occurred must be submitted to the jury. *Commonwealth v. Clapps, supra,* 355 Pa.Superior Ct. at 91, 512 A.2d at 1225.

■ In the instant case, the evidence did not establish entrapment as a matter of law, and the trial court properly submitted the issue to the jury for determination. Appellant's reliance upon *Commonwealth v. Thompson, supra,* where entrapment was found as a matter of law, is misplaced. There, a male, middle aged police officer had been induced to obtain and supply controlled substances by a young, attractive, female undercover agent following a dating relationship and gestures of endearment which had continued over a ten month period. A panel of the Superior Court observed:

> [T]he use of a young, blond female to coax a middle aged male after months of kissing and socializing, into committing a minor crime is not police conduct which presents the "mere opportunity" to commit a crime. As this case clearly shows, opportunity and inducement are two separate consequences of police activity. The latter occurred here.

*Id.* 335 Pa.Super. at 344, 484 A.2d at 166. In the instant case, the conduct of Agent Berlin was not as egregious. She did not "coax" appellant into unlawfully dispensing a controlled substance. There is no evidence that she established or promised, expressly or by implication, any relationship other than that of patient and physician. By posing as a patient who wished to control her weight, she did no more than provide appellant with an opportunity to dispense medication. When, without prodding or persuasion, she told him that she did not need and was not using the nighttime medication but that her boyfriend was using it,

she provided appellant with an opportunity to commit an illegal act.

Police use of artifice and stratagem to provide a person with an opportunity to commit a criminal act, without improper persuasion or inducement, does not amount to entrapment. See: *Commonwealth v. Thompson, supra* 335 Pa.Super. at 344, 484 A.2d at 166; *Commonwealth v. Lee,* 262 Pa.Super. 218, 221, 396 A.2d 724, 725 (1978). Here, there was nothing more than the establishment of an artificial relationship of patient and physician. Appellant was not otherwise persuaded or induced to dispense drugs illegally. Therefore, Berlin's conduct did not amount to entrapment as a matter of law. The issue was properly submitted to the jury, and the jury found that appellant had not been entrapped. Our review of the record discloses no basis for interfering with that finding.

■ Appellant's contention that conversations between physicians and their patients were privileged and could not properly be recorded has misconceived the nature of the doctor-patient privilege. This statutorily created privilege serves only to prevent physicians from disclosing certain information acquired while attending patients, without patient consent, in civil actions. See: 42 Pa.C.S. § 5929. See also: *Commonwealth ex rel. Romanowicz v. Romanowicz,* 213 Pa.Super. 382, 385, 248 A.2d 238, 240 (1968). The privilege was not intended to benefit or protect the physician but the patient. Therefore, the privilege does not prevent a patient from disclosing conversations with his or her physician. Moreover, it does not preclude the patient's giving consent to an electronic recording of conversations between physician and patient.

■ Electronic interception of oral conversations is lawful when accompanied by the consent of one of the parties to the conversation. 18 Pa.C.S. § 5704(2)(ii). The statutory allowance of such interceptions does not violate the Fourth Amendment of the United States Constitution or Article I, section 8 of the Pennsylvania Constitution. See: *Commonwealth v. Harvey,* 348 Pa.Super. 544, 550–56, 502 A.2d 679,

682–684 (1985); *Commonwealth v. Hassine,* 340 Pa.Super. 318, 355–357, 490 A.2d 438, 457–459 (1985). Appellant's argument that his right of privacy was violated and required the suppression of the electronically recorded conversations is without merit.

The judgment of sentence is affirmed.