668 A.2d 151

COMMONWEALTH of Pennsylvania

v.

Thomas WHITING, Appellant.

COMMONWEALTH of Pennsylvania

v.

David COOKE, Appellant.

Superior Court of Pennsylvania.

Argued Aug. 7, 1995.

Filed Nov. 9, 1995.

36

38

Richard J. Conn, Philadelphia, for Thomas Whiting.

Jean E. Purnell, Philadelphia (Submitted), for David Cooke.

Alan Sacks, Assistant District Attorney, Philadelphia, for the Commonwealth, appellee.

Before ROWLEY, President Judge, and CIRILLO and HOFFMAN, JJ.

HOFFMAN, Judge:

This is a consolidated *nunc pro tunc* appeal from appellant Thomas Whiting's November 3, 1988 judgment of sentence and from appellant David Cooke's February 9, 1989 judgment of sentence. Appellants raise the following issues for our review:

I. Did the Court err in permitting admission of tape recordings of [appellants] obtained in violation of procedures where ... the surveillance was conducted by a co-conspirator with no effective safeguards to assure reliability of the recordings?

II. Should the Court have suppressed post-indictment statements made by [appellants] where they were obtained by an agent of the Commonwealth in violation of [appellants'] Sixth Amendment rights under the Constitution of the United States and right to counsel under the Constitution of the Commonwealth of Pennsylvania?

III. Did the Court err in refusing to suppress evidence obtained by a Commonwealth Agent, a co-conspirator in the within matter, in the form of tape recorded post-arrest statements by [appellants] where [appellants] had asserted [their] right to refuse to make a statement following warnings pursuant to the *Miranda* decision?

IV. Did the Court err in refusing to suppress identification evidence obtained as the result of an unnecessarily suggestive pre-trial lineup procedure held despite the objection of [appellant Whiting]?

V. [Were appellants] denied a fair trial due to the Court's limiting the cross-examination of a key defense witness?

VI. Did the Court err in failing to properly instruct the jury pursuant to *Commonwealth v. Kloiber?*

VII. [Were appellants] denied a fair trial due to the Court's permitting the introduction of statements by a prosecution witness which were hearsay and violated the confrontation clause?

VIII. [Were appellants] denied a fair trial due to the Court's permitting the introduction of hearsay statements

and opinion evidence by a police officer concerning the credibility of witnesses?

IX. [Were appellants] denied a fair trial due to the Court's permitting hearsay testimony of a complaining witness concerning instructions and opinions of a police artist?

X. [Were appellants] denied a fair trial due to the Court's overruling defense objections to the testimony of a witness concerning telephone conversations to which he was not a party?

XI. [Was appellant Whiting] denied a fair trial due to the Court's overruling objections to prosecution references to evidence which had not been admitted at trial during summation?

Appellant Whiting's Brief at 4.[1] For the following reasons, we affirm.

Appellants' convictions arose from two armed robberies. The first robbery occurred on July 5, 1984 at around 8:00 p.m., as Dr. George Becker was closing his dental office for the evening. Appellants entered the office, demanded money, and appellant Whiting threatened Dr. Becker with a sawed-off shotgun. After restraining Dr. Becker, appellants fled with approximately $100. The next day, appellant Whiting entered the office of Edelstein Carpet Company with a sawed-off shotgun and demanded the payroll from William Hird and his secretary. Appellant Cooke guarded the door, and Hugh Keenan, a third perpetrator, was also present. The perpetrators fled with the payroll.

Shortly after the two incidents, appellants absconded to Florida. The third participant, Mr. Keenan, was arrested for an unrelated robbery. Hoping to receive a lenient sentence, Mr. Keenan provided the police with information which led to the arrest of appellants in Florida on November 7, 1984. Mr. Keenan also led the police to Diane Robinson, a co-conspirator who had driven the getaway car after the second robbery. In return for her testimony, Ms. Robinson was granted immuni-

---

1. Appellant Cooke raises the same issues in his brief, except for issues four and eleven, relating to the pretrial line-up and the prosecutor's closing statement. *See* Appellant Cooke's Brief at 1(a).

ty. Appellants were each charged with two counts of robbery[2] and two counts of criminal conspiracy.[3] Appellant Whiting was also charged with possessing an instrument of crime.[4]

While in jail awaiting trial, appellants repeatedly telephoned Ms. Robinson and threatened her. When Ms. Robinson informed the police of the threats, the police asked her if she would consent to the placing of a recording device on her phone. She and her father, in whose name the phone was listed, agreed and signed a consent form. Thereafter, Ms. Robinson recorded a number of conversations in which appellants implicated themselves in the robberies and threatened Ms. Robinson, in an effort to dissuade her from testifying against them.

On January 22, 1985 and February 19, 1985 appellants filed motions to suppress the tape-recorded conversations, and appellant Whiting filed a motion to suppress an identification based on a lineup. After extensive hearings from March 15, 1985 to July 19, 1985, both motions were denied. Following a six day trial, the jury found appellants guilty of all charges. Post-verdict motions were denied by an *en banc* panel consisting of the Honorable Marvin R. Halbert, who presided over the pre-trial motions and the trial itself, the Honorable Levy Anderson, and the Honorable Bernard J. Avellino. Thereafter, on November 3, 1988 appellant Whiting was sentenced to thirty (30) to sixty (60) years imprisonment. On February 9, 1989 appellant Cooke was sentenced to fifteen (15) to thirty (30) years imprisonment. Timely appeals were not filed, but the appellants' rights to appeal were eventually reinstated and this consolidated appeal *nunc pro tunc* is now properly before us.

In their first three issues, appellants assert that the trial court improperly admitted the phone conversations recorded by Ms. Robinson. Specifically, appellants contend that the

2. 18 Pa.C.S. § 3701(a).

3. 18 Pa.C.S. § 903.

4. 18 Pa.C.S. § 907(b).

recordings violated: (1) the Wiretapping and Electronic Surveillance Control Act of 1978; (2) appellants' Sixth Amendment guarantee to assistance of counsel; and (3) appellants' Fifth Amendment right against self-incrimination.

Preliminarily, we note that when reviewing an order entered by the suppression court, we must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Burnside*, 425 Pa.Super. 425, 429, 625 A.2d 678, 680 (1993). Where the evidence has not been suppressed, it is our duty to "consider only the evidence for the defense as fairly remains uncontradicted." *Commonwealth v. Reddix*, 355 Pa.Super. 514, 518, 513 A.2d 1041, 1042 (1986). When evidence supports the trial court's findings of fact, we will not reverse unless the conclusions drawn from those facts are erroneous. *Commonwealth v. Quiles*, 422 Pa.Super. 153, 156, 619 A.2d 291, 292 (1993) (*en banc*).

Appellants first argue that the recordings were made in violation of the Wiretapping and Electronic Surveillance Control Act. The Wiretapping Act provides that: "Any wire, electronic[5] or oral communication interception intercepted in accordance with this chapter shall, if practicable, be recorded by tape or other comparable method. The recording shall be done in such a way as will protect it from editing or other alteration." 18 Pa.C.S. § 5714(a). Furthermore, the statute provides that where practicable, a written record should be kept, logging the time, duration, and content of the interception. *Id.*

In the instant case,

[p]rior to the taping of these calls, Robinson was instructed on how to operate the recording device, and [was] specifically told not to edit or tamper with the tape recorder or the tapes at all. She was also instructed on how to call for the

---

**5.** References to electronic communications were added by amendment in 1988, after the instant trial. However, this amendment is inconsequential for purposes of this appeal.

"time and weather," how to document when the call came in....

Trial Court Op., June 28, 1990, at 9–10. Moreover, each time Ms. Robinson received a call from appellants, she contacted the detectives assigned to the case, who would pick up the used tape from her house and replace it with a new tape. Finally, the logging method was as follows: (1) Ms. Robinson phoned for the time and weather at the end of each call; (2) the calls were all collect, and therefore appeared on the phone bill with the specific date and time; and (3) the detectives logged the tapes in a book at the District Attorney's office after picking them up from Ms. Robinson. Under these circumstances, we will not upset the trial court's decision that these consensual recordings were sufficiently protected from alteration or editing and that the logging was adequate. *Quiles, supra;* 18 Pa.C.S. § 5714. *Cf. Commonwealth v. Frank,* 357 Pa.Super. 442, 448, 516 A.2d 64, 68 (1986) ("Electronic interception of oral conversations is lawful when accompanied by the consent of one of the parties to the conversation.").

Appellants next argue that the use of the recorded conversations amounted to a denial of their Sixth Amendment right to counsel and their Fifth Amendment right against self-incrimination. We disagree.

■ Where the government obtains statements after the right to counsel has attached, we must examine whether a defendant's Sixth Amendment right have been violated. *See Commonwealth v. Moose,* 529 Pa. 218, 225–26, 602 A.2d 1265, 1268–69 (1992). However, we have stated:

"the Sixth Amendment is not violated whenever—by luck or happenstance—the state obtains incriminating statements from the accused after the right to counsel has attached," a defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond

merely listening, that was designed deliberately to elicit incriminating remarks.

*Commonwealth v. Hoffman,* 367 Pa.Super. 79, 82–83, 532 A.2d 463, 464 (1987) (quotations omitted), *appeal denied,* 518 Pa. 636, 542 A.2d 1366 (1988), *cert. denied,* 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 334 (1988).

█ In the instant case, appellants' right to counsel had attached because they were in custody for the crimes charged. *Moose,* 529 Pa. at 228, 602 A.2d at 1270 (quoting *Commonwealth v. Karash,* 513 Pa. 6, 12–13, 518 A.2d 537, 541 (1986) ("The triggering event for Sixth Amendment rights to attach is the commencement of judicial proceedings against the defendant.")).

However, here, the trial court found that:

Diane Robinson did nothing more than listen to what the defendants had to say. There was no attempt by her to elicit any statements with regard to the threats which was a crime actually taking place, let alone any attempt to elicit information with regard to the original robberies. Further, the law enforcement officials did not put her in that [sic] position to obtain information with regard to the robberies, but, rather, to continue with their investigation involving the alleged threats.

Trial Court Op., June 28, 1990, at 12. After a review of the record, including the transcription of the audiotapes at issue, we agree with the trial court that Ms. Robinson did not elicit the incriminating statements. Consequently, we dismiss appellants' Sixth Amendment claims. *Commonwealth v. Mayhue,* 536 Pa. 271, 302, 639 A.2d 421, 436 (1994) (where informant's remark did not deliberately elicit incriminating statement, appellant's Sixth Amendment claim must fail); *Hoffman, supra* (tape recorded conversation admissible because no effort was made to elicit incriminating information).

█ We now turn to appellants' Fifth Amendment claim. The seminal case of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) held that the Fifth Amendment privilege against self-incrimination protects defendants

from custodial interrogation unless they have been given what are now called *Miranda* warnings. However,

> [i]t is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation. We reject the argument that *Miranda* warnings are required whenever a suspect is in custody ... and converses with someone who happens to be a government agent. Questioning by captors, who appear to control the suspect's fate, may create mutually reinforcing pressures that the Court has assumed will weaken the suspect's will, but where a suspect does not know that he is conversing with a government agent, these pressures do not exist.

*Illinois v. Perkins,* 496 U.S. 292, 297, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243, 251 (1990). Appellants made incriminating statements to Ms. Robinson without knowing she was a government informant, and, consequently, the concerns *Miranda* addresses were not implicated. Thus, we find this claim is also without merit.

Appellant Whiting next complains that the trial court erred in refusing to suppress identification evidence obtained as the result of a suggestive pretrial lineup.

"A pre-trial identification at a corporal lineup is inadmissible at trial when obtained ... by a procedure that is 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to deny the accused due process of law." *Commonwealth v. McKnight,* 311 Pa.Super. 370, 376, 457 A.2d 931, 935 (1983) (quoting *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967)).

In the instant case, a lineup, consisting of appellant Whiting and eight other men, was conducted on December 19, 1984. Defense counsel struck two of the fillers and objected to the lack of bearded fillers, because Whiting had a beard at the time of the lineup. The seven individuals in the final lineup, which included appellant Whiting, were all white, between five-foot-six-inches and six-feet tall, wearing navy trousers and a lighter blue short-sleeve shirt, and several had facial hair. N.T., July 12, 1985, at 18–20. After a review of the record, we

agree with the trial court that the lineup was not unduly suggestive. *McKnight, supra.* *See also Commonwealth v. Monroe,* 373 Pa.Super. 618, 623, 542 A.2d 113, 115 (1988) (photo array not impermissibly suggestive where defendant was only bald man in photographs), *appeal denied,* 522 Pa. 574, 559 A.2d 36 (1989); *Commonwealth v. Kyle,* 367 Pa.Super. 484, 507, 533 A.2d 120, 132 (1987) (lineup not unduly suggestive despite defendant's contention that none of the lineup participants, except defendant, matched victim's description of her assailant), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988). Consequently, we will not upset the trial court's decision. *Quiles, supra.*

■ Appellants next contend that the trial court erred in limiting defense counsels' cross-examination of prosecution witness Diane Robinson. More specifically, each defense counsel wanted to pursue a line of questioning regarding instances when Ms. Robinson was "on the run" with her husband, who was a fugitive, in order to place her character in question.

■ The Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him, which includes the right to cross-examine witnesses. *Commonwealth v. Spiewak,* 533 Pa. 1, 10, 617 A.2d 696, 700 (1992). However, "[i]t is well settled that it is within the discretion of the trial court to determine the scope and limits of cross-examination and that [an appellate court] cannot reverse those findings absent a clear abuse of discretion or an error of law." *Commonwealth v. Nolen,* 535 Pa. 77, 82, 634 A.2d 192, 195 (1993).

When defense counsel attempted to cross-examine Ms. Robinson regarding her being "on the run" with her fugitive husband, the trial court ruled the evidence inadmissible as Ms. Robinson was never convicted of a crime. *Commonwealth v. Fuller,* 336 Pa.Super. 507, 509, 485 A.2d 1197, 1198 (1984) (a witness's credibility may not be impeached by prior acts of misconduct which have not led to convictions). Consequently,

we find that the trial court did not abuse its discretion in limiting appellants' cross examination. *Nolen, supra.*[6]

Appellants next argue that the trial court erred in failing to properly instruct the jury pursuant to *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954), *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954) (holding that where the opportunity for positive identification is good and not weakened by prior failure to identify and the witness is positive in his identification even after cross-examination, identification need not be received with caution). Here, as part of its charge, the trial judge read directly from *Kloiber.* N.T., October 17, 1985 at 105; *Kloiber,* 378 Pa. at 424, 106 A.2d at 826. Consequently, appellants' claim is without merit.

■ Appellants' next several issues all challenge evidentiary rulings by the trial court. Initially, we note that the admissibility of evidence is a matter addressed to the sound discretion of the trial court, and we may reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Steele,* 522 Pa. 61, 73 n. 23, 559 A.2d 904, 910 n. 23 (1989).

■ Appellants first contend that the trial court erred by permitting the introduction of several statements by prosecu-

---

**6.** Appellants also argue that cross-examination of Ms. Robinson regarding being "on the run" with her fugitive husband should have been allowed because (1) the Commonwealth put her character at issue, portraying her participation in the robbery as an aberration from her normally law-abiding life; and (2) it showed that Ms. Robinson was biased in the case because she received immunity from prosecution in return for testifying. Our review of the record, however, reveals that Ms. Robinson testified that she regularly used drugs from a young age, had willingly conspired in a robbery, and had initially lied to the police regarding the incident. Furthermore, there was a plethora of testimony regarding Ms. Robinson's "deal" with the Commonwealth in which she obtained immunity in return for her testimony. Consequently, as testimony regarding being "on the run" would have merely been cumulative, we dismiss appellants' claim. *Nolen, supra. See also Commonwealth v. Sneed,* 514 Pa. 597, 526 A.2d 749 (1987) (no reversible error where trial court prohibited defense cross-examination regarding favorable treatment received by witnesses because the prosecutor had made clear on direct examination the favorable treatment the witness was to receive).

tion witness Hugh Keenan. As the statements were properly admitted as prior consistent statements, we disagree.

Prior consistent statements constitute hearsay when offered for the truth of their assertions. *Commonwealth v. Wood,* 417 Pa.Super. 264, 269, 612 A.2d 474, 476 (1992) (*en banc*), *appeal denied,* 534 Pa. 639, 626 A.2d 1157 (1993). However, such statements are admissible to rehabilitate a witness' credibility and to rebut accusations or suggestions of recent fabrication or corrupt motives. *Commonwealth v. Murphy,* 540 Pa. 318, 330, 657 A.2d 927, 933 (1995).

During cross-examination of Mr. Keenan, defense counsel insinuated that Keenan fabricated a story regarding the robbery to receive a lenient sentence for an unrelated robbery charge. In response, the prosecution had Sergeant Joseph Descher and Detective William Schol read into the record statements that each took from Mr. Keenan on September 10, 1984, and September 18, 1984, respectively, in which Keenan gave his version of the facts in the case. Consequently, we find that the trial court did not abuse its discretion in admitting these prior consistent statements which rebut suggestions of recent fabrication or corrupt motives. *Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173 (1980) (where defense cross-examination suggested that witness had fabricated trial testimony in return for plea bargain, introduction of witness' prior consistent statement was proper); *Murphy, supra* ("the admission of prior consistent statement is a matter to be decided by the trial judge in the exercise of his or her discretion").

Appellant Whiting also challenges Sergeant Descher's testimony that Mr. Keenan said, "That's Tom Whiting," after he was shown the composite drawing prepared with Mr. Hird's participation. However, a review of the record reveals that the testimony was not offered for the truth of its assertion, but instead was offered to explain the course of Officer Descher's conduct. *Commonwealth v. Jones,* 540 Pa. 442, 450–51, 658 A.2d 746, 750 (1995) ("out-of-court statements offered to explain the course of police conduct are admissible on the basis that they are offered not for the truth of the

matters asserted but rather to show information upon which police acted"). Consequently, we do not find that the trial court abused its discretion. *Steele, supra.*

■ Appellants also argue that the court erred in permitting William Hird to testify as to the instructions he received prior to preparing the "composite" drawing.

Specifically, Mr. Hird stated, "We were told that it wouldn't be exactly—you know, wasn't going to look just like the person, but just try to be close." N.T., October 9, 1985, at 38. The trial judge sustained defense's objection, but then allowed the testimony for a limited purpose. *Jones, supra* (course of police conduct). As the statement was not admitted for the truth of its assertion, we find no error. *Commonwealth v. Heath,* 319 Pa.Super. 319, 322, 466 A.2d 178, 180 (1983) ("When a witness testifies that someone said something to him and the purpose is not to show that what was said was true but only that it had a particular effect on the witness, the testimony is not hearsay."); *Steele, supra.*

■ Appellants next argue that the court erred in allowing Ms. Robinson to testify that she received information that appellants were telephoning her home while she was away. As this testimony, which is devoid of the content of the calls, was offered merely to explain why Ms. Robinson decided to contact the police, we find no error. *Commonwealth v. De-Hart,* 512 Pa. 235, 254, 516 A.2d 656, 666 (1986) ("It is well-settled that an out-of-court statement offered to explain a course of conduct is not hearsay."), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987); *Steele, supra.*

■ Appellants next argue that the trial court erred in permitting the prosecutor to ask a detective how he felt. The testimony was as follows:

Assistant District Attorney: Why did you feel [Hugh Keenan] was referring to Diane Robinson?

Detective Schol: We had met [Diane Robinson] before that, and from her description—we also met her son, who at that

time was two years old and a little blond boy, we also had indications from our prior contacts with family members— N.T., October 15, 1985, at 93. We agree with appellants that the prosecutor's use of the word "feel" was inappropriate. However, the thrust of the question and its response were admissible. Therefore, we find this error to be harmless. *Commonwealth v. Story*, 476 Pa. 391, 412, 383 A.2d 155, 166 (1978) (error harmless where properly admitted evidence of guilt is overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict).

█ Lastly, appellant Whiting contends that the trial court erred by failing to declare a mistrial after the prosecution, during closing argument, referred to the audiotapes themselves which were not in evidence in the trial.

█ The standard for determining whether a remark made during the prosecution's closing argument warrants a new trial is "whether the unavoidable effect of the contested comments was to prejudice the jury, forming in [the jurors'] minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict." *Commonwealth v. Ragan*, 538 Pa. 2, 35, 645 A.2d 811, 827 (1994) (quoting *Commonwealth v. Chester*, 526 Pa. 578, 599, 587 A.2d 1367, 1377 (1991), *cert. denied*, 502 U.S. 959, 112 S.Ct. 422, 116 L.Ed.2d 442 (1991)).

In the instant case, when the prosecutor, during closing, pointed to the audiotapes Ms. Robinson recorded, defense counsel objected. The trial court then explained to the jury that the tapes were not in evidence, and instructed the jury to rely on its own recollection of the testimony. We find that the trial court was within its discretion in finding that the prosecutor's reference to the tapes did not unavoidably prejudice the jury and therefore necessitate a mistrial. *Ragan, supra. Commonwealth v. Carter*, 537 Pa. 233, 265, 643 A.2d 61, 77 (1994) (prejudice by prosecutorial remarks can be cured by trial court's instructions), *cert. denied*, —— U.S. ——, 115 S.Ct.

1317, 131 L.Ed.2d 198 (1995); *Commonwealth v. La,* 433 Pa.Super. 432, 452, 640 A.2d 1336, 1347 (1994), *appeal denied,* 540 Pa. 597, 655 A.2d 986 (1994) ("The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be reversed absent a flagrant abuse of that discretion."). Consequently, we dismiss this claim.

Accordingly, for the reasons set forth above, we affirm.

Affirmed.