J-S33034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JELANI SONDARI | : | |
| Appellant | : | No. 2939 EDA 2017 |

Appeal from the Judgment of Sentence August 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007327-2013

BEFORE:   OTT, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JUNE 05, 2018**

Appellant Jelani Sondari appeals from the judgment of sentence of two years' probation entered in the Court of Common Pleas of Philadelphia County on August 10, 2017, following his conviction of resisting arrest.[1]  We affirm.

The trial court set forth the relevant procedural and factual history herein as follows:

**Procedural History**

> On August 10, 2017, Appellant [ ] proceeded to trial before this [c]ourt, sitting without a jury. The [c]ourt found Appellant guilty of resisting arrest, only. Appellant was sentenced that same date to two years probation[.]
> A timely Notice of Appeal was filed on September 8, 2017[.]
> On September 31, 2017, the [c]ourt entered an order directing the filing of a Statement of Matters Complained of on Appeal, pursuant to Pa. R. A. P. 1925(b)[.]
> A timely Statement pursuant to Pa.R A P 1925(b) was filed on October 6, 2017.

---

[1] 18 Pa.C.S.A. § 5104.

---

\* Former Justice specially assigned to the Superior Court.

**Factual History**

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following:

On the afternoon of Wednesday, November 23, 2012, police officers were in the vicinity of 4100 Germantown Avenue investigating a narcotics transaction, involving entry into a parked white van[.] N.T. 8/10/17, pp 8-9[.] As the officers attempted to stop the two men, they fled and the officers gave chase. Crack cocaine was recovered from one male, while the second discarded several dozen Percocets and Xanax pills. N T 8/10/17, pp. 9-11[.]

Because of the possible involvement of the van, the officers sought to secure it for investigation[.] N.T. 8/10/17, pp. 10, 12. Upon returning to the van, the officers observed Appellant enter the van and sit in the driver's seat[.] [T]here was a three-year-old child, identified as Appellant's son, [ ] in the back seat[.] N T 8/10/17, pp 13, 39[.]

Officer Strubinger explained to Appellant that the van was being held for investigation, then requested that Appellant exit the van[.] N.T 8/10/17, pp 12, 40, 51. Appellant refused to exit the vehicle. N.T. 8/10/17, pp. 12-13[.] Officer Russel[] drew his taser and directed Appellant to exit the vehicle, which he refused to do[.] N T 8/10/17. pp. 40, 42, 46. Instead Appellant pulled the child into his lap. N T. 8/10/17, pp. 14-15, 26, 40, 45.

After a few minutes of Officer Strubinger attempting to convince Appellant to leave the vehicle, Officer Waltman stepped up and open[ed] the passenger door to pull Appellant from the vehicle as Officer Russel attempted to get Appellant's attention[.] N.T. 8/10/17, pp 13-14, 33-34, 42. As Officer Waltman grabbed Appellant, Appellant turned and punched Officer Waltman in the jaw, snapping his head back. N T. 8/10/17, pp. 13-14, 48[.] Officer Waltman suffered a laceration to his chin from being punched[.] N.T. 8/10/17, pp 30-32, 41, 49, 53; Exhibit D -2(a) and (b)[.] At that point, Officer Russell, who was standing at the open front passenger window of the van, discharged his taser at Appellant. N T 8/10/17, pp. 14-15[.] Appellant fell from the vehicle, [was] handcuffed and transported to the hospital. N.T. 8/10/17, pp 15. 28, 32-33.

Trial Court Opinion, filed 10/19/17, at 1-2.

In his brief, Appellant presents the following "Statement of the Questions Involved":

> Did the lower court violate Appellant's state and federal constitutional rights to confront his accuser by improperly curtailing trial counsel's cross-examination of both Commonwealth witnesses while attempting to show that the witnesses had a bias, motive to lie and were offering inaccurate and deceitful testimony[?]

Brief for Appellant at 3.

> The Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him, which includes the right to cross-examine witnesses. However, it is well settled that it is within the discretion of the trial court to determine the scope and limits of cross-examination and that an appellate court cannot reverse those findings absent a clear abuse of discretion or an error of law.

***Commonwealth v. Whiting***, 668 A.2d 151, 157 (Pa.Super. 1995) (citations and internal quotations omitted), appeal denied, 544 Pa. 629, 675A.2d 1247 (1995). Although "the allowance or disallowance of questions on cross-examination is normally left to the sound discretion of the trial judge[,] where limitations imposed by the court upon cross-examination are such as plainly inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable." ***Commonwealth v. Spiewak***, 533 Pa. 1, 13, 617 A.2d 696, 702 (1992).

Appellant maintains that the trial court's act of curtailing defense counsel's cross-examination violated his right to confront witnesses against him secured by the Sixth and Fourteenth Amendments to the United States

Constitution and Article 1, Section 9 of the Pennsylvania Constitution in that it prohibited counsel from "assessing the officers' bias, motivation to lie, imperfections of perception, memory and narration." Brief for Appellant at 11. Appellant highlights the following exchanges to support his argument:

> During cross-examination, trial counsel attempted to elicit from the testifying officers that their conduct-and in particular Officer Russel's conduct-ran directly counter to the Philadelphia Police Department's directives regarding the use of tasers. As soon as trial counsel mentioned the directives-and without objection from the Commonwealth-the lower court stated: "I just want to make sure we're going to try this like a criminal case and not a civil rights case-which I would love to hear one day-but that's not where we are." (id. at 18-23).
>
> After trial counsel elucidated from Officer Strubinger that it was counter to the department's directives to draw a taser on a suspect who is merely passively resisting, counsel asked, "[i]f somebody had pulled out their taser ahead of time, before the punch, that would not be appropriate, correct?" Again, without objection from the Commonwealth, the lower court jumped in prior to the officer answering the question and the following exchange occurred:
>
>> **THE COURT**: We're going to stop it here, see, because this is what happens when we get into directives, we get into speculation of how they should be applied. How they should be applied is really up to the fact finder, whether it be a panel or a CP judge in a criminal trial. I've heard the facts from his perspective, and I'm happy to hear anything else. Just, I'm done with the directives.
>>
>> **TRIAL COUNSEL**: Well, Your Honor, that's what we're -- when they're allowed to use this force and when they are not. If an officer breaks a directive, it's reasonable to think that he may not be honest down the road to cover up, especially in a situation like that where there were multiple officers who have since been promoted.
>>
>> **THE COURT**: Again, you've established his understanding of what the directives are. He's told you what happened in his mind.

- 4 -

> **TRIAL COUNSEL**: Fair enough.
>
> **THE COURT**: Let's move on.
>
> (id. at 23). Later, when trial counsel began cross-examining Officer Waltman along the same lines, counsel was again shut down (id. at 46).
>
> During cross-examination of the same witness, trial counsel asked whether any officer documented who the toddler was released to or anything else about the child. The lower court indicated "[t]hat might be the subject of a discovery motion in which case I would rule as to whether or not you need that. We're at trial. This is not a discovery dep[osition] or anything like that[.]" (id. at 35).
>
> In addition, during cross-examination of Officer Waltman, trial counsel asked, "I'm assuming, given what's going on, the child was pretty hysterical, pretty upset?" Again without a Commonwealth objection, the lower court prohibited that line of questioning and stated, "I'm done talking about that" (id. at 51). Prior to that question, there had been no questions or discussion regarding the child's demeanor throughout the trial.

Brief for Appellant at 7-9.

A review of the record reveals that Appellant did not request a sidebar or otherwise act to preserve his claim that his right to confrontation under both the state and federal constitutions was violated when the trial court made its rulings. Rather, the record reflects that Appellant continued cross-examination by pursuing other lines of questioning. Additionally, Appellant failed to preserve the issue he now attempts to raise in a post-trial motion. In fact, Appellant stated in his notice of appeal filed on September 8, 2017, that "[n]o post-sentence motions were filed." Therefore, Appellant has waived this issue on appeal. **See** Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal); **see also**

***Commonwealth v. Sanchez***, 623 Pa. 253, 297, 82 A.3d 943, 969 (2013) (same).

Even assuming *arguendo* that Appellant properly preserved this claim for appellate review, he fails to demonstrate how the trial court's controlling the scope of the officers' cross-examination plainly inhibited Appellant's ability to obtain a fair trial. Contrary to Appellant's assertions, the trial court did not forbid counsel from exploring the question of whether the officers violated the police department's regulations. Indeed, Appellant admits "the Commonwealth's case showed that Officer Russel violated Philadelphia Police Department Directive 10.3." Brief for Appellant at 15. Moreover, Appellant acknowledges "the Commonwealth and Appellant presented incompatible accounts through competent evidence. The primary question to be resolved by the finder of fact was a question of credibility- who to believe." ***Id***. at 19.

The trial court acted as fact finder, and the record supports its conclusions that it had provided Appellant's counsel significant leeway to cross-examine police officers on police department directives and policy. The trial court stressed that Officer Geoffrey Strubinger was examined regarding taser training and procedures, and Officer Ryan Waltman answered similar questions as well as discussed his familiarity with taser use. The trial court explained it limited Officer Strubinger's testimony only after defense counsel had posed sixteen questions pertaining to taser training and even thereafter permitted an additional five interrogatories on this point before counsel

"drifted off point."[2] The court further stated it did not permit examination regarding the use of an ASP[3] or other type of baton, because no such instrument was involved in the instant matter. Trial Court Opinion, 10/19/17, at 3-5 (citing N.T., 8/10/17, at 18-25, 46, 53).

In addition, the trial court pointed out it allowed defense counsel to cross-examine officers regarding documentation and paperwork they prepared during the course of their investigation. The court noted it sustained the Commonwealth's objection to defense counsel's questioning of Officer Strubinger concerning who picked up Appellant's son after Appellant's arrest as it deemed it to be irrelevant to the charge of resisting arrest. Trial Court Opinion, 10/19/17, at 5 (citing N.T., 8/10/17, at 35). The trial court added that despite Appellant's claims to the contrary, it permitted defense counsel ample leeway in questioning the officers about their treatment of the child at the time of Appellant's arrest. While defense counsel asked twenty-one questions in this regard, the only objection the trial court sustained was that

---

[2] The trial court indicated it would allow questions concerning the procedure followed in this case "with limitations" and maintained that in its view "someone can act wrongfully even if they're [sic] in compliance with directives and vice versa." N.T., 8/10/17, at 20.

[3] An ASP collapsible baton is a metal weapon that extends to approximately 30 inches in length and is used by law enforcement and marketed to the public as a self-defense weapon.

which followed the query regarding the child's demeanor. *Id*. at 6 (citing N.T., 8/10/17, 18, 26, 27, 29, 43, 35, 44, 45, 47, 49, 50, 51-52).

Following our review of the record and in light of the foregoing, had Appellant's issue not been waived on appeal, we would find that it lacks merit, because he has entirely failed to demonstrate how the trial court abused its discretion or otherwise inhibited his ability to obtain a fair trial by restricting his cross-examination of the officers. Therefore, we affirm Appellant's judgment of sentence.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/18

---

[4] This Court is not bound by the rationale of the lower court, and we may affirm it on any basis. *Commonwealth v. Williams*, 73 A.3d 609, 617 (Pa.Super. 2013), *appeal denied*, 624 Pa. 690, 87 A.3d 320 (2014).