J. S15035/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JONATHAN COX, | : | No. 3551 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 19, 2016,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0006302-2015

BEFORE: STABILE, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 03, 2018**

Jonathan Cox appeals from the October 19, 2016 judgment of sentence entered in the Court of Common Pleas of Montgomery County following his conviction in a jury trial of one count of rape of a child, three counts of statutory sexual assault (complainant under 16 years of age), and one count each of aggravated indecent assault (complainant less than 16 years of age), indecent assault (complainant less than 13 years of age), endangering the welfare of children, corruption of minors, and indecent assault (complainant less than 16 years of age).[1]  The trial court sentenced appellant to an aggregate term of incarceration of 30 years and 6 months to 76 years.  We affirm.

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3122.1(b), 3125(a)(8), 3126(a)(7), 4304(a)(1), 6301(a)(1)(ii), 3126(a)(8), respectively.

The trial court set forth the following:

> The victim, N.B., and three of her younger siblings began living with [appellant] and his family in Norristown, Montgomery County, after being removed from their mother's house on March 25, 2014.[Footnote 1] N.B. was 12-years-old at the time. Her family knew [appellant] because he was the bishop at their church, the Greater Refuge Temple of Deliverance, and he agreed to act as a foster parent.
>
>> [Footnote 1] The parties stipulated at trial that N.B. was in [appellant's] care from March 25, 2014, to May 20, 2014.
>
> On April 4, 2014, at approximately 12:15 p.m., [appellant] signed N.B. out of school for a doctor's appointment.[Footnote 3] He subsequently told N.B. that the appointment had been cancelled and took her to his house in Norristown.
>
>> [Footnote 3] [Appellant] has not raised a challenge to the weight or sufficiency of the evidence against him.
>
> The two were alone in the house, sitting on the couch watching television, when [appellant] began to hug N.B. and kiss her on the face. N.B. moved to the floor, but [appellant] followed her. He put his hand inside her skirt and underwear and touched her vagina. [Appellant] eventually stopped and told N.B. not to tell anyone what had happened or the police would come and get them.
>
> On another occasion prior to May 4, 2014, N.B. and her three younger sisters were asleep at night on mattresses in the dining room of [appellant's] house when N.B. awoke to find [appellant] putting his hands inside her pajama pants and underwear. N.B. pretended to be asleep because she was scared. [Appellant] again touched N.B.'s vagina.

A fire damaged [appellant's] house on May 4, 2014, and he and his family had to find alternate living accommodations. Either that same night, or the evening of the following day, N.B. and her three younger sisters were staying at the church with [appellant], awaiting a call from [appellant's] wife about a possible hotel room. While N.B.'s sisters were asleep, [appellant] told N.B. to go into the bathroom. He pulled down N.B.'s pants and underwear and put his penis inside her vagina. He had vaginal intercourse with N.B. until he ejaculated. [Appellant's] hands also touched the outside of N.B.'s vagina.

On a fourth occasion, sometime before May 19, 2014, [appellant], N.B. and her three younger siblings were at the church at night when [appellant] called for N.B. to come into his office. [Appellant] pulled down her pants and underwear, had her lean on a chair and he put his penis inside her vagina. [Appellant] ejaculated inside N.B. and had her touch his penis before sending her out of the office to check on her sisters.

On May 19, 2014, [appellant] signed N.B. out of school for a doctor's appointment at approximately 1:20 p.m. [Appellant] later told N.B. the appointment had been cancelled. He took her to a hotel room in King of Prussia, Montgomery County, that his family had rented after the fire. With the two alone in the room, he pulled up her shirt, pulled down her pants, kissed her breasts and engaged in vaginal intercourse with her. He stopped after ejaculating inside N.B. Before leaving the room, [appellant] took a photograph on his cellular phone of N.B. with her shirt unbuttoned and her pants slightly pulled down. He also told N.B. not tell anyone what had happened or the police would come and get them.

The following day, N.B. and her three younger sisters went to live with their uncle, E.D., and his wife in Philadelphia because [appellant's] family no longer had the means to care for them.[Footnote 4] In

January the following year, E.D. had a discussion with the children about appropriate behavior after learning that one of N.B.'s younger sisters had been masturbating in the bathroom. He mentioned during the discussion that if anyone tried to touch the girls inappropriately, they should report it. N.B. approached E.D. after the discussion and disclosed to him that [appellant] had touched her and had sex with her when she was living with him.

> [Footnote 4] E.D. and has wife have since been granted permanent legal custody of N.B. and her younger sisters and the children continue to reside with them.

[Appellant] was arrested following an investigation and the case proceeded to a three-day jury trial. The jury found [appellant] guilty of one count of rape of a child, three counts of statutory sexual assault, one count of aggravated indecent assault of a person less than 16 years of age, one count of indecent assault of a person less than 13 years old, one count of endangering the welfare of minor, one count of corruption of minors and one count of indecent assault of a person less than 16 years of age. This court later sentenced [appellant] to prison terms of 20 to 40 years for rape of a child, 2 to 10 years each for two of the statutory sexual assault offenses,[Footnote 5] 3 1/2 to 7 years aggravated indecent assault, 1 to 3 years for indecent assault of a person less than 13, 1 to 3 years for endangering the welfare of a child offense and 1 to 3 years for corruption of minors.[Footnote 6] The sentences aggregated to 30.5 to 76 years.

> [Footnote 5] The remaining conviction for statutory sexual assault merged with the rape offense for purposes of sentencing.

> [Footnote 6] The court imposed no further penalty on the remaining convictions.

> [Appellant] did not file a post-sentence motion. He filed a **pro se** notice of appeal. This court appointed the Public Defender's Office to represent [appellant] and subsequently granted appointed counsel's request for a 90-day extension of time to file a [Pa.R.A.P.] 1925(b) statement of errors. [Appellant] filed the Rule 1925(b) statement on April 24, 2017.

Trial court opinion, 5/18/17 at 1-5 (citations to notes of testimony omitted; footnote 2 omitted).

Appellant raises the following issues for our review:

> I. Did the trial court erroneously sustain the Commonwealth's objection to defense questions regarding whether the [victim] had ever observed her biological parents having sex, where the defense had a constitutional right to explore whether the child [victim] had an alternative source of premature knowledge about adult sexuality?
>
> II. Did the trial court erroneously permit a detective to offer an opinion as to whether the signatures on various documents were those of [a]ppellant, where the detective had no expertise in the field of handwriting analysis and where his opinion usurped the role of the jury to determine the facts of the case?
>
> III. Did the trial court erroneously permit a detective to offer an opinion as to whether the child [victim's] "disclosures were credible[,"] where the introduction of this opinion usurped the role of the jury to determine the ultimate issue of fact?
>
> IV. Did the court impose a clearly unreasonable sentence which was manifestly excessive under the circumstances of the case and which violated both 42 Pa.C.S.[A.] §9781(c) and the

> fundamental norms underlying the sentencing process?

Appellant's brief at 4-5.

Appellant first complains that the trial court violated his constitutional right to confront witnesses against him when it prevented him from cross-examining the forensic interviewer who interviewed the victim as to whether the victim had ever observed her biological parents having sex. (Appellant's brief at 17.)

> The Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him, which includes the right to cross-examine witnesses. However, it is well settled that it is within the discretion of the trial court to determine the scope and limits of cross-examination and that an appellate court cannot reverse those findings absent a clear abuse of discretion or an error of law.

***Commonwealth v. Whiting***, 668 A.2d 151, 157 (Pa.Super. 1995) (citations and internal quotations omitted). Although "the allowance or disallowance of questions on cross-examination is normally left to the sound discretion of the trial judge[,] where limitations imposed by the court upon cross-examination are such as plainly inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable." ***Commonwealth v. Spiewak***, 617 A.2d 696, 702 (Pa. 1992).

Here, during appellant's cross-examination of the forensic interviewer, the following took place:

> Q.  In this case, did you -- were you provided with any background?

A.     So it is protocol for myself, as the interviewer, to meet with the team before the family even comes to Mission Kids [Child Advocacy Center[2]].

In that pre-team meeting, as we call it, the team -- anyone that knows the child in any way lets me know about any communication or developmental challenges that the child has. Anything that I need to know in terms of how to best communicate with the child.

If there has been an allegation said by the child, I am informed about that.

Q.     Okay.  You are told what basically the factual basis of the allegation is?

A.     I am told that.

Q.     This is what is being alleged against this person, right?

A.     Uh-huh.

Q.     Okay.  And are you -- if there are any medical records, are you provided with those to review, or they are not really part of your --

A.     No.

Q.     You don't get involved in that, right?

A.     Not typically.

Q.     Children & Youth was there that day, correct? Someone from Children & Youth was present?

---

[2] The forensic interviewer testified that Mission Kids Child Advocacy Center is a nonprofit organization that serves Montgomery County by facilitating and providing the forensic interview of a child whenever there is an allegation of child abuse within the county.  (Notes of testimony, 5/24/16 morning session at 31.)

> A. I don't remember exactly, but that is our protocol.
>
> Q. So typically they would be?
>
> A. Yes.
>
> Q. And were you provided with any background regarding their family -- [the victim's] family history and situation?
>
> A. I don't remember. So no.
>
> Q. There was an indication that the children -- [the victim] and her siblings had been exposed to their biological parents having sex in front of them?
>
> [THE COMMONWEALTH]: Objection.
>
> [DEFENSE COUNSEL]: Were you aware of that?
>
> THE COURT: Sustained.
>
> BY [THE DEFENSE]:
>
> Q. You took notes with regard to this interview; is that right?

Notes of testimony, 5/24/16 morning session at 47-49.

The record demonstrates that after the trial court sustained the Commonwealth's objection, appellant did not request a sidebar or otherwise act to preserve his current claim that his constitutional right to confrontation was violated when the trial court sustained this objection. Rather, the record reflects that appellant continued cross-examination by pursuing another line of questioning. Additionally, appellant failed to preserve the

issue he now attempts to raise in a post-trial motion. Therefore, appellant waives this issue on appeal. *See* Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal); *see also Commonwealth v. Sanchez*, 82 A.3d 943, 969 (Pa. 2013) (same).

Even assuming *arguendo* that appellant properly preserved this issue, appellant fails to demonstrate how the trial court, in sustaining this objection, limited appellant's cross-examination of the forensic interviewer so as to plainly inhibit appellant's ability to obtain a fair trial. Moreover, the record supports the trial court's conclusion that:

> [appellant] also provided no factual foundation for the question, saying simply that "there was an indication" that N.B. and her siblings had been exposed to their parents having sex in front of them. While a defendant has a Sixth Amendment right to confront Commonwealth witnesses with "verifiable" facts, the right does not permit "fishing expeditions." *See [Commonwealth v.] Rosser*, 135 A.3d [1077,] 1088-1089 [Pa.Super. 2016] ("the Sixth Amendment does not entitle the defendant to cross-examine a Commonwealth witness on a subject for which the defendant cannot provide a factual foundation.).

Trial court opinion, 5/18/17 at 8-9.

Therefore, even if appellant had properly preserved this claim for our review, it would fail, not only because the question lacked a factual foundation, but also because appellant has entirely failed to demonstrate

how the trial court inhibited his ability to obtain a fair trial by sustaining this objection.

Appellant next complains that the trial court abused its discretion when it permitted Police Corporal James Angelucci to testify that the signature on the victim's April 4, 2014; April 30, 2014; and May 19, 2014 school sign-out sheets matched the signature on appellant's vital statistics form.[3]

"On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited. A trial court's decision will not be reversed absent a clear abuse of discretion." **Commonwealth v. Aikens**, 990 A.2d 1181, 1184 (Pa.Super. 2010) (citations omitted). "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Id.** at 1184-1185 (citations omitted). Where there is a question as to any writing, the opinions of any person acquainted with the handwriting of the supposed writer is deemed relevant. 42 Pa.C.S.A. § 6111(a)(1).

Here, Corporal Angelucci first testified that he is familiar with appellant's handwritten signature. (Notes of testimony, 5/24/16 afternoon session at 27.) Over appellant's objection, the trial court then permitted Corporal Angelucci to testify that the signatures on the April 5, 2014;

---

[3] Corporal Angelucci testified that when a person is arrested, he or she must fill out a vital statistics form. (Notes of testimony, 5/24/16 afternoon session at 27.)

April 30, 2014; and May 19, 2014 school sign-out sheets matched the signature on appellant's vital statistics form. (*Id.* at 28-31.) Because Corporal Angelucci testified that he is familiar with appellant's handwritten signature prior to testifying that the signatures on the school sign-out sheets and the signature on the appellant's vital statistics form match, we discern no abuse of discretion. We further note that our review of the record reveals that appellant testified that he took the victim out of school on April 5, 2014; April 30, 2014; and May 19, 2014. (Notes of testimony, 5/25/16 morning session at 56-64.) As such, appellant's testimony corroborated Corporal Angelucci's testimony, as the purpose of the latter was to demonstrate that appellant took the victim out of school on those dates. Therefore, this claim lacks merit.

Appellant next complains that the trial court abused its discretion by permitting Corporal Angelucci to vouch for the credibility of the victim. (Appellant's brief at 26-27.) To bolster this claim, appellant compares the corporal's testimony to the misconduct of a prosecutor when that prosecutor assures the jury that a witness is credible based on either the prosecutor's personal opinion or other information contained outside of the record. (*Id.* at 25-26.) The record belies appellant's claim.

The record reflects that Corporal Angelucci testified on direct examination, without objection, that the school sign-out records corroborated the disclosures that the victim made to the police in her

statement. (Notes of testimony, 5/24/16 afternoon session at 30.) The following then took place:

> Q. Did you do anything else to corroborate what [the victim] had disclosed in her statement?
>
> A. Yes. I did a follow-up with her healthcare provider.
>
> Q. Why did you do that?
>
> A. To ensure that she wasn't taken out of school on obvious days for legitimate purposes.

*Id.*

Corporal Angelucci then testified as to the details of the follow-up investigation that he conducted with respect to records that he had received from the victim's healthcare provider. (*Id.* at 31-34.) After this detailed explanation, the following took place:

> Q. So at this point you have the school records and you have the dental records and you have the records from Delaware Valley. What do you think at this point?
>
> A. That [the victim] --
>
> [DEFENSE COUNSEL]: Objection as to -- isn't that the ultimate question here?
>
> [THE COMMONWEALTH]: It is part of his investigation, Your Honor.
>
> THE COURT: Overruled. You can answer that question.
>
> [OFFICER ANGELUCCI]: That [the victim] was -- her disclosures were credible.

– – –

BY [THE COMMONWEALTH]:

Q. In what way?

A. In the dates that she was taken out of school which coincide with -- she stated that she was taken out of school two specific dates and that those dates she did not go to the doctor's, that she was sexually assaulted.

Q. And your investigation revealed that how many dates were unaccounted for?

A. Two.

Q. And then there are two others where she went to the doctor's?

A. Correct.

*Id.* at 34-35. Appellant's claim that Corporal Angelucci testified that the witness was credible based on the corporal's personal opinion or other information contained outside of the record lacks record support. Contrary to appellant's claim, the record demonstrates that the corporal testified as to the details of his investigation of documentary evidence that corroborated the victim's version of events. Therefore, this claim necessarily fails.

Appellant finally challenges the discretionary aspects of his sentence.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice,

bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169-170 (Pa.Super. 2010)

(citation omitted; brackets in original).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, [752 A.2d 910, 912 (Pa.Super. 2000)]. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Moury***, 992 A.2d at 170 (citation omitted; brackets in original).

Here, although appellant filed a timely notice of appeal, he failed to properly preserve his sentencing challenge because he neither raised the challenge at sentencing nor filed a post-sentence motion to reconsider and modify sentence. Therefore, appellant has failed to invoke our jurisdiction.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/18

---

[4] We note that even if appellant had invoked our jurisdiction, it is obvious that appellant would have failed to raise a substantial question. Appellant argues that "after considering all of these [mitigating] factors, the court imposed consecutive life sentences totaling a minimum of 30.5 to a maximum of 76 years – the functional equivalent of a life sentence for a 54 year old man with major medical issues." (Appellant's brief at 29; footnote 3 omitted.) Just as we have noted that an appellant is not entitled to a volume discount when a court imposes consecutive sentences for multiple crimes, we note that an appellant is neither entitled to a seasonal discount when he commits his crimes in the autumn of his life nor a health discount when he commits his crimes while infirm. *See Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa.Super. 1995) (noting that a defendant is not entitled to a "volume discount" for multiple crimes by having all sentences run concurrently).