538 A.2d 34

**COMMONWEALTH of Pennsylvania**

v.

**Thomas M. DELLIGATTI, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 14, 1987.

Filed Feb. 11, 1988.

316

318

H. David Rothman, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before BROSKY, DEL SOLE and HOFFMAN, JJ.

DEL SOLE, Judge:

Appellant was charged and convicted of five counts of Possession of Heroin in violation of 35 Pa.S.A. § 780–113(a)(16) and five counts of Delivery of Heroin in violation of 35 Pa.S.A. § 780–113(a)(30). Post-verdict motions were filed and denied by the trial court. Thereafter, Appellant was sentenced to three consecutive two-to-five years terms of incarceration and two consecutive ten years probationary periods. This appeal follows.

By his appellate brief, Appellant lodges the following arguments:

I. By agreeing to and allowing Appellant to retain a quantity of heroin to perpetuate his own addiction as the inducement for each of the five deliveries in issue, the

police became so overinvolved that they violated due process and entrapped Appellant as a matter law;

II. Appellant was denied a fair trial because of the court's refusal to make the informant available to the Appellant and his counsel before and during trial and because of the court's refusal to instruct the jury, as requested, relative to the Commonwealth's failure to produce the informant and because of the court's refusal to allow counsel to argue inferences based on the Commonwealth's failure to produce the informant;

III. The court erred and abused its discretion in refusing other points for charge;

IV. Appellant was denied a fair trial because he was not allowed an individual voir dire;

V. Appellant was denied a fair trial because the court refused to allow certain questions proposed for prospective jurors; and,

VI. The trial judge erred in a number of his evidentiary rulings and in restricting the cross examination of the Commonwealth's primary witness, Detective Craig.

We begin with a synopsis of the facts leading to Appellant's arrest. The record reflects that on August 8, 1985 Detective Timothy Craig, of the Pittsburgh Police Department, was working undercover in a drug-related investigation. On that date, Detective Craig accompanied a confidential informant to an apartment occupied by Gary Schillinger. Appellant was present in the apartment during this visit and introduced himself to Detective Craig. Detective Craig was introduced as "Jimmy" (N.T., 6/18/86, 22). Appellant asked Detective Craig and the informant what they were looking for. Detective Craig's response was a "bundle" of heroin (N.T., 6/18/86, 23).[1] After making three phone calls, Appellant asked Detective Craig if he wanted to go for a ride. Detective Craig drove as Appellant directed him to the 800 block of Rebecca Street in Wilkinsburg.

1. Detective Craig explained during trial that the term "bundle" was a common expression describing a number of balloons of heroin which varies between 15 to 17 balloons (N.T., 6/18/86, 23).

Detective Craig stopped the vehicle, gave Appellant $220, and watched Appellant enter a building. A few minutes later, Appellant returned with a bundle of heroin (N.T., 6/18/86, 24-26). As Detective Craig drove Appellant back to the apartment, Appellant retained a few balloons for himself and gave the remaining balloons to Detective Craig (N.T., 6/18/86, 29).

The next time Detective Craig came in contact with Appellant was on September 3, 1985 at the Arcade Bar in Edgewood (N.T., 6/18/86, 30-32). Once again, Appellant asked Detective Craig what he could do for him. Detective Craig responded that he wanted another bundle of heroin. Appellant advised Detective Craig that he could obtain the heroin for him. The two men left the bar, entered Detective Craig's vehicle, and drove to Rebecca Street again. Detective Craig handed $220 to Appellant, watched him enter the same building as before, and waited for Appellant's return. Appellant came back to the vehicle, and as Detective Craig drove back to the bar, removed a couple of balloons from a bundle of heroin and gave Detective Craig the balance (N.T., 6/18/86, 33-35).

On October 16, 1985, Detective Craig made arrangements to meet Appellant on the corner of Forbes Avenue and Braddock Avenue. At this meeting, Appellant asked Detective Craig what he was looking for. Once again, Detective Craig related that he wanted a bundle of heroin. Appellant agreed to secure the heroin. Detective Craig gave Appellant $220 and waited for his return. When Appellant returned to the street corner one half hour later, Detective Craig got into Appellant's car. Appellant handed him a package, which had been opened, containing 12 balloons of heroin (N.T., 6/18/86, 37-41).

Detective Craig's fourth encounter with Appellant occurred on October 23, 1985. The two men met at the same street corner as during the last transaction. Appellant asked Detective Craig what he was looking for. Detective Craig's response was "the same" (N.T., 6/18/86, 42). Appellant agreed to obtain the heroin, received $220 from

Detective Craig, and left. Approximately one hour later, Appellant returned and presented Detective Craig with 12 baggie corners of heroin (N.T., 6/18/86, 41–51).

The final drug purchase occurred on January 2, 1986. Detective Craig contacted Appellant and arranged to meet him once again at the corner of Forbes and Braddock Avenues. Appellant agreed to procure heroin for Detective Craig. On this occasion, Detective Craig was permitted to follow Appellant in his car to South 18th Street in the South Side of Pittsburgh. Both cars came to a stop, Appellant approached Detective Craig's vehicle and asked for the usual $220. Appellant told Detective Craig to wait for him there and then drove away in his car. Appellant returned and handed Detective Craig a cigarette pack containing 11 baggie corners of heroin. At this time a surveillance team of the Pittsburgh Police Department arrived and Appellant was placed under arrest (N.T., 6/18/86, 51–57).

Appellant first contends that Detective Craig's conduct in this case violated his due process rights, or in the alternative, amounted to entrapment. The due process claim is based on the fact that, during the course of their dealings, Detective Craig permitted Appellant to retain certain amounts of the acquired heroin. Appellant urges that Detective Craig's actions in this respect were outrageous and manifested overinvolvement by the police.

In *Commonwealth v. Mathews*, 347 Pa.Super. 320, 500 A.2d 853 (1985), we held that "[e]ven where entrapment is not proved, police involvement in criminal activity may be so outrageous that a prosecution will be barred on due process grounds." *Id.*, 347 Pa.Superior Ct. at 321, 500 A.2d at 854. *See United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). The appellees in *Mathews* were arrested for the manufacture of methamphetamine. Upon being found guilty of attempt to manufacture a controlled substance, the trial court, on post-verdict motions, arrested judgment on grounds that the police

conduct was so outrageous that the appellees were denied due process. We affirmed.

The record in that case showed that the police provided the appellees with money so that they could rent the residence where they were arrested. Appellees were also supplied with the money and the means by which the chemicals needed for the manufacture of methamphetamine could be purchased. Likewise, the police assisted in physically bringing equipment to the residence in which the appellees attempted to concoct the controlled substance. Furthermore, due to the appellees' ineptitude in manufacturing the controlled substance, an Allegheny County criminalist and chemist's services were utilized to render step-by-step instructions in mixing the formula. In the end, the fruit of these efforts amounted to a brown sludge containing methamphetamine. *Id.*, 347 Pa.Superior Ct. at 325–328, 500 A.2d at 855–857.

It was apparent from the record that the appellees were unable to commit the crime despite the police's overwhelming efforts to teach them how to accomplish their goal. The trial court astutely observed that "[t]he police not only set the stage for the criminal act but also were principal players thereon without which Defendants could not have acted. Slip op. of tr. ct. at 8–9." *Id.* at 500 A.2d at 857. Clearly, the facts in *Mathews* illustrated outrageous conduct on part of the police so as to bar prosecution on due process grounds.

We are unconvinced that Detective Craig's conduct in the instant matter violated " 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *United States v. Russell, supra,* at 411 U.S. 432, 93 S.Ct. at 1643, *quoting, Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960). Appellant argues that Detective Craig became overinvolved when he permitted Appellant to retain part of the heroin which Appellant had secured for him. However, we cannot find on that fact alone that the investigative techniques used by Detective Craig manifested outrageous behavior.

Unlike the circumstances present in *Mathews*, Detective Craig did not take an overly active role in Appellant's commission of the crimes charged. There is no evidence that Appellant was issued step-by-step instructions amounting to sophisticated puppetry on Detective Craig's part. To the contrary, the record is replete with testimony that Appellant issued the terms by which Detective Craig would receive the bundles of heroin. That Detective Craig permitted Appellant to retain a portion of the acquired heroin as a commission for his services does not evoke a finding of overinvolvement. Detective Craig testified that Appellant's decision to skim a few balloons from the bundle as a "copping" fee was done normally in that course of business (N.T., 6/18/86, 72–73). Detective Craig also related that it was not a practical option to arrest Appellant at the time he took out his payment insofar as it would jeopardize the entire investigation and threaten the welfare of his confidential informant (N.T., 6/18/86, 101). The record simply does not support Appellant's position that Detective Craig purposely allowed him to retain a portion of the heroin as an inducement for the deliveries. Viewed in this light, we find nothing in Detective Craig's action with respect to the retained heroin which would indicate an egregious violation of due process concepts of fundamental fairness.[2]

Appellant further argues that Detective Craig's conduct evinced entrapment as a matter of law. The present test for entrapment in this Commonwealth is found at 18 Pa.C.S.A. § 313:

> (a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

**2.** By his dissenting opinion in *Mathews, supra,* our esteemed colleague, Judge Wieand, has collected case law from various jurisdictions in which police conduct was not found to be in violation of due process. *Id.,* 347 Pa.Superior Ct. at 329–330, 500 A.2d at 858.

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

By writing this statute, our legislature renounced a previously utilized "subjective" standard in analyzing entrapment claims which focused upon the predisposition of the accused to commit the crime charged. Section 313 instead reflects the adoption of an "objective" standard which centers on the tactics and conduct of the police. Thus, "the test for determining whether an accused was entrapped was whether the conduct of the police offended the factfinders' sense of justice." *Commonwealth v. Clapps*, 355 Pa.Super. 80, 89, 512 A.2d 1219, 1224 (1986).

■ We note that the determination of whether or not police conduct amounts to entrapment is a jury question, unless the evidence clearly establishes entrapment as a matter of law. *Id.*, 355 Pa.Superior Ct. at 90, 512 A.2d at 1225. Instantly, we disagree with Appellant's assertion that Detective Craig's tactics constituted entrapment as a matter of law. In *Commonwealth v. Stokes*, 264 Pa.Super. 515, 400 A.2d 204 (1979), we considered the appellant's entrapment claim under similar circumstances. The evidence in that case disclosed that the appellant was approached by an undercover detective who asked the appellant to sell him a quantity of heroin. On appeal, we determined that the police conduct, viewed objectively, did no more than provide the appellant with the opportunity to sell some heroin:

> [t]he undercover agent in the instant case merely provided a market if appellant wished to sell. He let it be known that he was interested in buying heroin, but he did not importune appellant in any way.

*Id.*, 264 Pa.Superior Ct. at 518, 400 A.2d at 206.

In the case at bar, Detective Craig approached Appellant and asked him to obtain heroin for him. Appellant readily

accepted the proposition on five separate occasions without Detective Craig's insistence. It is quite evident from the record before us that Detective Craig's conduct was in no way calculated to induce an innocent person to deal with heroin. Therefore, we find that entrapment did not exist as a matter of law. Furthermore, there is sufficient evidence in the record to support the jury's determination that Appellant was not entrapped into procuring the heroin.

Next, Appellant contends that he was denied a fair trial insofar as the trial court refused to order disclosure of Detective Craig's informant at both the pre-trial and trial stages of Appellant's case. Appellant states that he sought the identity and location of the information so that it could be determined whether or not the informant would corroborate Appellant's testimony.

In *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967) our Supreme Court recognized a qualified privilege with respect to the disclosure of confidential informants. This privilege allows the Commonwealth "to refrain from disclosing the identity of an informer" and "limits the prosecution's duty to make available to the defense the names and whereabouts of all material eyewitnesses." *Id.* at 233 A.2d at 285. Before disclosure of an informant's identity is required, the proponent for disclosure must make more than a mere assertion that the identity of an informant might be helpful to the defense. Although exact predictions of what the informant might say cannot be expected, a reasonable possibility that the informant could give testimony that would tend to exonerate the defendant must be suggested. *Commonwealth v. Fleck*, 324 Pa.Super. 227, 235, 471 A.2d 547, 550 (1984). Of fundamental concern in these matters is fairness. "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Commonwealth v. Speaks*, 351 Pa.Super. 149, 505 A.2d 310, 315 (1986), *quoting Roviaro v. United States*, 353 U.S. 53, 60–62, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957).

■ We have reviewed the allegations contained in Appellant's brief on this issue. We conclude that the statements contained therein amount to little more than a bald assertion that the identity and location of Detective Craig's informant might be helpful to his defense. As expressed, *supra*, we cannot expect Appellant to present specific testimony concerning information that the informant could possibly divulge. Nonetheless, Appellant merely argues that the informant should have been made available to him because the informant could have corroborated Appellant's testimony. In what respect this could be accomplished is not expounded upon by Appellant.

■ Furthermore, the evidence adduced at trial does not suggest that the informant was able to bolster Appellant's case. Detective Craig testified that the informant in this case was used as a tool of introduction so that he could become associated with Appellant (N.T., 6/18/86, 35–36). The evidence shows that the informant directed Detective Craig to Mr. Schillinger's apartment and supplied him with Appellant's phone number. Other than this, there is no indication from the record that the informant was apprised of the integral details of Detective Craig's dealings with Appellant. Thus, we conclude that the trial court did not err in refusing Appellant's motions to compel disclosure of the informant's identity and locations.

■ As a corollary to this issue, Appellant urges that he was entitled to a "missing witness" instruction which would advise the jury that an adverse inference might be drawn from the Commonwealth's failure to produce the informant as a witness. It is true that the missing witness rule provides that a negative inference may be drawn from the failure of a party to call a particular witness who was in that party's control. However, an inference may not be drawn where there exists a satisfactory explanation as to why the party failed to call such a witness. *Commonwealth v. Rohach*, 344 Pa.Super. 229, 496 A.2d 768, 771–72 (1985). *See Commonwealth v. Lahoud*, 339 Pa.Super. 59, 488 A.2d 307 (1985); *Commonwealth v. March*, 308 Pa.Su-

per. 343, 454 A.2d 567 (1982); *Commonwealth v. Gibson,* 245 Pa.Super. 103, 369 A.2d 314 (1976).

We conclude that the Commonwealth supplied the trial court with a satisfactory reason for not calling the informant to testify during trial. Namely, the informant's identity was confidential. It is obvious that, had the informant been called as a witness to testify, the Commonwealth's objective of protecting the informant's anonymity would have been stymied. Accordingly, we find no merit in Appellant's argument.

Appellant next asserts that the trial court erred in refusing certain points for charge. Preliminarily, we state our appellate standard of review. In assessing the charge of a trial court, we will review the charge as a whole. *Commonwealth v. Sparks,* 351 Pa.Super. 320, 328, 505 A.2d 1002, 1006 (1986). It is the general effect of the charge that controls; error will not be predicated upon an isolated excerpt of the trial court's charge. *Commonwealth v. Wallace,* 347 Pa.Super. 248, 500 A.2d 816, 820 (1985).

Appellant claims that the trial court erred in refusing to charge the jury that Pennsylvania public policy is violated if the police permit a person to retain possession of heroin for any purpose. Appellant also contends that the trial court should have charged the jury that if it were determined that "permitting the defendant to retain heroin ... is not materially different from directly giving heroin to a defendant, then [the jury] must find the defendant not guilty."

■ These instructions relate to Appellant's defense of entrapment. Upon review of the instructions given to the jury on the entrapment issue, we find that the charge adequately apprised the factfinders of the nature of this defense. Moreover, we cannot agree that Appellant's proffered jury charges would have been appropriate. In essence, these charges would have mandated a finding of entrapment if certain circumstances were found to exist by the jury. However, we must remind Appellant that entrapment is a *factual finding* to be rendered by the jury, unless entrapment as a matter law is found by the trial court. *See*

*Commonwealth v. Clapps, supra,* 355 Pa.Superior Ct. at 91, 512 A.2d at 1225. We find that Appellant's instructions would have introduced theories of entrapment to the jury which simply have no basis in law, and which would have usurped the jury's factfinding function. Therefore, Appellant's jury instructions were properly denied.

■ On the same topic, Appellant alleges that the trial court should have instructed the jury that the Commonwealth had the burden of presenting a case free from entrapment once Appellant introduced evidence of entrapment. We disagree. An instruction to that effect would have misrepresented the status of the law in this area. It is well-settled that entrapment is a *defense* which is available to a defendant who admits to at least "some" of the elements charged. *Commonwealth v. McGuire,* 339 Pa.Super. 320, 334, 488 A.2d 1144, 1151 (1985). Moreover, our legislature has adamantly placed the burden of proof on the defendant once the requisite admissions are made:

> (b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313(b). Appellant's jury charge that places the burden of proof on the Commonwealth after evidence of entrapment is presented completely ignores § 313(b)'s provisions which clearly state that a defendant must demonstrate entrapment by a preponderance of the evidence. Accordingly, Appellant's argument must fail.

Appellant's next contention is that he was denied a fair trial because he was not allowed an individual *voir dire.* The purpose of the *voir dire* system is to ensure that the jury is comprised of fair, competent, impartial, and unprejudiced individuals. *Commonwealth v. Merrick,* 338 Pa.Super. 495, 500, 488 A.2d 1, 3 (1985). To this end, Pa.R. Crim.P. 1106(e) vests the trial judge, in non-capital cases, with discretion in choosing whether potential jurors will be questioned collectively or individually. *Commonwealth v.*

*Hathaway,* 347 Pa.Super. 134, 144–145, 500 A.2d 443, 448 (1985).

■ Appellant makes the bald assertion that it was imper-ative that he was given the opportunity to interrogate the prospective jurors individually with regard to their attitudes on the distribution of all drugs, particularly heroin. How-ever, other than lodging this accusation, Appellant does not state in either specific or general terms how this refusal by the trial court prejudiced him. It is not the function of this Court to consider, and respond to, vacuous claims. "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Commonwealth v. Sanford,* 299 Pa.Super. 64, 67, 445 A.2d 149, 150 (1982).

Closely related to the previous issue is Appellant's con-tention that he was denied a fair trial because the trial court refused to allow certain questions proposed for pro-spective jurors. Appellant refers to submitted *voir dire* questions which were geared towards probing the venire-persons' attitudes on the subject of drugs.

The scope of *voir dire* examination rests within the sound discretion of the trial judge, whose ruling shall not be reversed absent a gross abuse of discretion. *Common-wealth v. Lark,* 350 Pa.Super. 558, 565, 504 A.2d 1291, 1295 (1986). Appellant's seventh *voir dire* question stated:

[t]he defense in this case is that the police became so overinvolved by taking advantage of defendant's addic-tion to heroin that their use of him to obtain heroin and their allowing him to retain some of the heroin is contrary to the law and public policy in this Commonwealth. Do you have any preconceived ideas on this subject that would prevent you from giving the accused a fair trial?

■ We agree with the trial court's decision to disallow this question. In *Commonwealth v. Drew,* 500 Pa. 585, 459 A.2d 318, (1983), our Supreme Court commented:

[n]either counsel for the defendant nor for the Commonwealth should be permitted to ... ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case.

*Id.*, 500 Pa. at 589, 459 A.2d at 320, *quoting Commonwealth v. McGrew*, 375 Pa. 518, 525, 100 A.2d 467, 470 (1953). It is quite apparent that Appellant's seventh question would apprise the venirepersons of the case he wished to have developed during trial. The question, in turn, was then calculated to gain an insight into the examinees' impressions or preconceptions of the particular facts contained in Appellant's scenario. Undeniably, such a question falls outside of the gamut of permissible questions for *voir dire* purposes. The inquiry should be strictly confined to disclosing the prospective jurors' ability to render a fair and impartial verdict and whether the jurors have formed a fixed opinion as to the accused's guilt or innocence. *Id.*, 500 Pa. at 589–590, 459 A.2d at 320–321. Appellant's proffered question clearly was designed to probe deeper than the venirepersons' qualifications to become jurors.

 ■ Appellant argues that question eight of his proposed *voir dire* questions should have been permitted by the trial court. The eighth question asked whether the subjects of possession and distribution of heroin disturbed the venirepersons to the point that a fair and objective decision could not be rendered. We note that this question is almost identical to question three, which advised the potential jurors that Appellant had been a heroin addict, and asked whether this fact would prevent them from being impartial factfinders. Insofar as both questions cover the same topic, namely, the venirepersons' attitudes toward the use of heroin, we are unconvinced that Appellant was prejudiced by the trial court's refusal to permit question eight.

 ■ The final questions which Appellant argues should have been included during *voir dire* are:

9. Are you or is any member of your family or close friend employed, directly or indirectly, in a health profession?; and,

10. If the answer to the previous question is in the affirmative, have you or has any member of your family or close friend been involved in treating or caring for alcoholics, other drug abusers, or have you been engaged in work relating to their rehabilitation?

We cannot agree with Appellant's position that the trial court erred in refusing these questions. The nature of these questions would have been irrelevant to the facts of the case. Moreover, Appellant has not demonstrated how they related to the prospective juror's ability to render a fair and impartial verdict. Simply stated, the questions were irrelevant to the legitimate purposes of *voir dire* and were properly disallowed by the trial court. *Commonwealth v. Drew*, 500 Pa. at 590, 459 A.2d at 321.

The final segment of Appellant's argument deals with certain evidentiary rulings made by the trial court. The admission and exclusion of evidence is a matter vested within the trial court's discretion. "An abuse of that discretion may be found if it appears that a trial judge admitted irrelevant evidence that was prejudicial to the accused or evidence the probative value of which was outweighed by its prejudicial impact or its tendency to suggest decision on an improper basis." *Commonwealth v. Shain*, 324 Pa.Super. 456, 462, 471 A.2d 1246, 1248–49 (1984).

In the instant matter, Appellant complains that the trial court abused its discretion in permitting the Commonwealth to question Appellant concerning his heroin source. The record shows that, at side bar, it was indicated that Appellant would not reveal this information. During his testimony, the Commonwealth requested that Appellant name his heroin supplier. However, Appellant responded that he would not divulge the source's identity since he feared for his, and his family's, physical safety (N.T., 6/18/86, 163). Appellant now argues that this question was not relevant, competent, or material to the issues involved

in the case. Appellant further posits that this question generated a prejudicial atmosphere by placing him in an unfavorable light in the presence of the jury since he refused to reveal the heroin source. We disagree.

The Commonwealth appropriately points out that this question was relevant to the case at bar, given the fact that Appellant pursued an entrapment defense. "Evidence is relevant if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value." *Commonwealth v. Shain, supra,* 324 Pa.Superior Ct. at 462–463, 471 A.2d at 1249. One of the prominent issues discussed during trial was whether Detective Craig's conduct induced a person, otherwise not ready to commit the offense, to engage in criminal conduct. We are of the opinion that the question concerning the heroin supplier advanced the inquiry with respect to Detective Craig's conduct, as viewed in light of the factual circumstances of the case. Likewise, we cannot accept Appellant's contention that he was prejudiced in any way by the Commonwealth's question.

■ Appellant asserts that the trial judge erred by permitting Detective Craig to testify concerning the number of times he had seen heroin packaged for street delivery. Appellant suggests that this testimony inflamed the jury's perception of drug trafficking in Pittsburgh. We have reviewed this testimony and find Appellant's argument to be completely unfounded.

■ Further, Appellant challenges the testimony which allowed inquiry concerning Detective Craig's motives for the repeated transactions with Appellant. Appellant states that these statements were not relevant. It is clear that this testimony was relevant to the issue of entrapment insofar as it revealed that Detective Craig pursued the drug dealings so that Appellant's heroin source would ultimately be divulged. Thus, this argument, too, must fail.

Finally, Appellant raises allegations that the trial court unduly restricted defense counsel's cross-examination of Detective Craig. Appellant states that cross-examination concerning the identity and location of the confidential informant was erroneously denied by the trial judge. We have already discussed the substance of this issue, *supra*, and decline to repeat that analysis. Appellant also claims that defense counsel was prohibited from questioning Detective Craig on police policy with respect to undercover drug purchases.[3] Upon reviewing this segment of the testimony, we find that the only restrictions placed on counsel-for-Appellant's cross-examination of Detective Craig resulted from defense counsel's determination to repeat questions which had been already answered by the witness. In fact, the record reveals that the trial court, over the Commonwealth's objection, even permitted defense counsel to repeat a question concerning police policy to which Detective Craig had previously responded (N.T., 6/18/86, 82–86). Accordingly, we find no abuse of discretion.

The judgment of sentence is affirmed.

---

**3.** We caution Appellant that he has failed to point to the specific portions of the notes of testimony which would substantiate this charge. *See* Pa.R.A.P. 2119(c).