**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AARON MICHAEL WILLIAMS | : | |
| | : | |
| Appellant | : | No. 559 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 28, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002225-2017

BEFORE:  SHOGAN, J., DUBOW, J., and KING, J.

MEMORANDUM BY SHOGAN, J.:                          **FILED: MAY 20, 2021**

Appellant, Aaron Michael Williams, appeals from the judgment of sentence entered on January 28, 2020, after a jury found Appellant guilty of three counts of Possession with Intent to Deliver ("PWID"), three counts of Delivery of a Controlled Substance, and three counts of Possession of a Controlled Substance.[1]   After careful review, we affirm the judgment of sentence.

We set forth the following procedural and factual history. In 2015, several members of the Pennsylvania Attorney General's Office, the Plum Borough Police Department and the Penn Hills Police Department were part of a drug task force investigating whether Appellant was selling illegal narcotics.

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(30), and 780-113(a)(16), respectively.

On March 31, 2015, a confidential informant ("CI") contacted Appellant at cellular telephone number 412.612.0668 and arranged to purchase heroin. N.T. (Trial), 10/23/19, at 95. Police searched the CI and provided officially documented funds to the CI to purchase the heroin. *Id*. at 115. The CI and Detective Joseph Signorella drove to a residential location on Mt. Carmel Road. The CI was driving, and Detective Signorella was a passenger. *Id*. at 114. Several other officers were present near the location, providing cover. *Id*. at 79, 219. Appellant approached the CI and Detective Signorella from the driver's side of the automobile, and the funds were exchanged for drugs. *Id*. at 115. In addition to the CI and Detective Signorella, Detective Kenneth Farmerie was positioned in such a manner that he observed the transaction between the CI and Appellant. N.T. (Trial), 10/24/19, at 270. The CI handed the drugs to Detective Signorella, and they left the location. N.T. (Trial), 10/23/19, at 115. After returning to the predetermined location, Detective Signorella counted fifty stamp bags of heroin, marked "Total Control." *Id*.

A second controlled-buy took place on May 4, 2015. The CI again contacted Appellant at phone number 412.612.0668. N.T. (Trial), 10/24/19, at 275-276. Appellant directed the CI and Police Officer William Moore, an individual associated with the task force, to a Shop 'n Save grocery store in Penn Hills. N.T. (Trial), 10/23/19, at 139. Officer Moore drove the CI's car to the location, and the CI was in the passenger's seat. *Id*. at 141. Multiple officers provided cover and surveillance. N.T. (Trial), 10/24/19, at 271. After

Appellant arrived at the Shop 'n Save, the CI left the automobile and entered the passenger side of Appellant's vehicle. N.T. (Trial), 10/23/19, at 143. Officer Moore watched Appellant and the CI exchange money and drugs. *Id*. at 144. The CI then exited Appellant's vehicle and entered the automobile with Officer Moore. Officer Moore took custody of the heroin, and he and the CI returned to their original location. *Id*. At that location, Officer Moore counted fourteen bags of heroin marked "Tap Out." *Id*. at 145. After realizing they had not received all the heroin they had agreed to purchase, the CI and Officer Moore texted Appellant at the same 412 phone number, and Appellant agreed to provide additional heroin the following day. *Id*. at 145-146. The parties agreed to meet at a shopping plaza near the Shop 'n Save. *Id*. at 146-147.

On May 5, 2015, Officer Moore and the CI drove to the shopping plaza parking lot. After Appellant arrived, the CI and Appellant exited their vehicles, exchanged greetings, and entered Appellant's vehicle, with Appellant on the driver's side and the CI on the passenger's side. *Id*. at 148. Multiple officers provided cover and surveillance. Officer Moore observed the CI and Appellant exchange the official funds for heroin. *Id*. at 149. Another officer, Officer Darryl Granata, testified that he and every other officer who provided cover observed Appellant. N.T. (Trial), 10/24/19, at 235. Chief Michael Klein testified that he observed Appellant through a monocular to be sure he could identify him, but noted that given the short distance between them, the

monocular was not necessary. *Id*. at 244-245. The CI returned to Officer Moore's vehicle, and they drove to the designated meet spot where the stamp bags were counted and entered into evidence. The seven stamp bags were marked "Fun Power." N.T. (Trial), 10/23/19, at 151.

The fourth controlled-buy took place on May 28, 2015. The CI contacted Appellant and arranged to purchase two bundles of heroin for $150.00. N.T. (Trial), 10/23/19, at 171. The CI contacted Appellant using a different telephone number than the one used in the previous buys. *Id*. The CI drove Officer Signorella to a residential area in Penn Hills. *Id*. at 172. Multiple officers provided cover and surveillance. *Id*. at 181. Appellant drove up, and the cars were positioned driver's side window to driver's side window. *Id*. at 172. The CI handed Appellant the official funds, and Appellant handed the CI a pack of Newport cigarettes containing approximately twenty-four stamp bags of heroin. *Id*. at 173. Officer Signorella and the CI returned to their initial location, and another detective counted the stamp bags of heroin. *Id*. The bags were stamped with the words "Top Five." *Id*. at 175. Appellant subsequently was arrested.

On June 15, 2017, Appellant filed an Omnibus Pretrial Motion including, *inter alia*, a Motion to Disclose the Identity, Address and Communications of Confidential Informant and a Motion to Sever Charges. Appellant's Omnibus Pretrial Motion, 6/15/17. Appellant filed amended Omnibus Pretrial Motions on September 7, 2017, and April 17, 2018. The trial court held a hearing on

Appellant's various pretrial motions on May 5, 2018 and denied Appellant's motion to sever following argument at the hearing. N.T. (Motions Hearing), 5/11/18, at 52-54. Following the hearing, the trial court requested additional briefs on the subject of the identification of the CI. *Id*. at 98. Appellant filed an additional brief on May 14, 2018, and the trial court denied the motion on May 15, 2018. Order, 5/15/18.

Appellant was tried before a jury on March 26 and 27, 2019. The jury was unable to reach a unanimous verdict, and the case ended in a mistrial. N.T. (March Trial), 3/27/19, at 406. Appellant proceeded to a second jury trial on October 22, 2019. After all the evidence had been received, Appellant requested that the trial court give jury instruction 3.21A, Failure to Call a Potential Witness. N.T. (Trial), 10/24/19, at 352. The trial court denied the request. *Id*.

The jury found Appellant guilty of three counts of Delivery of a Controlled Substance, three counts of PWID, and three counts of Possession. The jury found Appellant not guilty of counts four, five, and six, which were charges stemming from the May 4, 2015 buy. Appellant proceeded to sentencing on January 28, 2020. The trial court sentenced Appellant to twenty-one to forty-two months of incarceration and two years of probation for each of the Delivery convictions with the remaining charges merging; thus, Appellant received an aggregate sentence of sixty-three to 126 months of incarceration followed by six years of probation. Order of Sentence, 1/18/20.

Appellant filed a timely post-sentence motion, which the trial court denied.[2] Order, 4/15/20.

Appellant filed a timely notice of appeal on May 14, 2020. Appellant filed his Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal on June 19, 2020. On July 2, 2020, the Honorable Bruce Beemer filed a letter with this Court transmitting the record without judicial opinion.

Appellant presents the following three questions for our review:

I.     Did the trial court err in failing to disclose the identity of the CI where the disclosure was material and reasonable, and [Appellant's] right to a defense outweighed the Commonwealth's speculative claims about the CI's safety?

II.    Did the trial court err in denying the motion to sever where consolidation of the offenses unduly prejudiced [Appellant], the evidence of each offense would not have been admissible in a separate trial, and/or the evidence was capable of separation by the jury?

III.   Did the trial court err in denying [Appellant's] request for an adverse inference jury instruction where the CI was not available to the defense, and possessed material information that was not merely cumulative?

Appellant's Brief at 8 (full capitalization omitted).

In his first issue, Appellant argues that the trial court erred when it denied Appellant's motion to disclose the identity of the CI. Appellant's Brief at 21. In support, Appellant claims the Commonwealth presented no evidence

_____

[2] Appellant's trial counsel, Wendy Williams, filed a petition to withdraw as counsel on February 6, 2020. The trial court granted the petition and appointed the Allegheny County Public Defender's Office to represent Appellant during his appeal. Order of Court, 2/21/20.

other than that of police officers, who had obstructed or distant views of the transactions, and the identity of the CI was material to Appellant's defense of mistaken identity. *Id*.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa. Super. 2013).

Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

(a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses....

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. *Commonwealth v. Bing*, [551 Pa. 659, 713 A.2d 56 (1998)]; *Commonwealth v. Roebuck*, 545 Pa. 471, 681 A.2d 1279, 1283 n. 6 (1996). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. *Roebuck, supra* at 1283. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine

whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth. ***Bing****, supra* at 58; ***Commonwealth v. Herron****,* 475 Pa. 461, 380 A.2d 1228 (1977).

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.
>
> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
>
> ***Commonwealth v. Carter****,* 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting ***Roviaro v. United States****,* 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

***Commonwealth v. Marsh****,* 606 Pa. 254, 260–261, 997 A.2d 318, 321–322 (2010).

***Commonwealth v. Watson***, 69 A.3d 605, 607-608 (Pa. Super. 2013).

In support of this issue, Appellant argues that the disclosure of the CI's identity is material to Appellant's defense of mistaken identity. Appellant's Brief at 23. Appellant further avers that the CI was present for all of the buys

and had the closest vantage point to Appellant. *Id.* Ultimately, Appellant argues that fundamental fairness requires disclosure of the CI's identity. *Id*. At the hearing on the motion, when asked what evidence Appellant had that supported the allegation, counsel replied that "[we] feel there is no credible evidence against the defendant." N.T. (Motions Hearing), 5/11/18, at 71. The following exchange took place between Appellant's counsel and the trial court:

> The court: In a case like this, Ms. Williams, why is the motive of the confidential informant material? Why is that even relevant? These officers were there and watched these deals go down. Whether this informant was a hired gun or was being paid to do this or whether he did this out of the goodness of his heart, the bottom line is your client allegedly exchanged drugs for money in front of these detectives on four separate occasions. Why is the motive of the CI even material?
>
> Ms. Williams: My position is motive and bias is always relevant.
>
>                    \* \* \*
>
> Ms. Williams: Okay, but this is 18 months later with no other evidence, no photographs, no phone records, nothing else.
>
> The court: But my question to you is, what evidence do you have of mistaken identity that a confidential informant could possibly strengthen?
>
> Ms. Williams: It is my position that the evidence is material and it might alter the jury's judgment.
>
> The court: But why? You cannot just -- you cannot just quote to me from case law. You have a burden here of establishing materiality and it cannot just be tried based on case law.

| Ms. Williams: | The testimony in this case is solely based on the testimony of police officers with nothing to corroborate it. And I think in a case like this, given the totality of the circumstances, we're entitled to that in order for him to get a fair trial. |

*Id*. at 73-74.

As discussed above, Appellant must first show that the sought-after information is material to the preparation of his defense. *Marsh*, 997 A.2d at 321-322.

> The defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable probability the informant could give evidence that will exonerate him. More than a mere assertion that disclosure of the informant's identity might be helpful is necessary. Only after this threshold showing that the information is material and the request is reasonable is the trial court called upon to determine whether the information is to be revealed.

*Commonwealth v. Belenky*, 777 A.2d 483, 488 (Pa. Super. 2001) (citations omitted). The court will exercise its discretion to determine if the information should be provided by balancing relevant factors, which are initially weighted toward the Commonwealth. *Marsh*, 997 A.2d at 321-322.

In the instant case, following a hearing on the pretrial motions, the court found that Appellant failed to proffer any evidence of mistaken identity despite being repeatedly asked for the same. N.T. (Motions Hearing), 5/11/18, at 91. Specifically, the court noted that given the lack of evidence regarding the defense of mistaken identity, Appellant had no more than "speculative hope" that the CI would "identify someone else or refuse to testify or something along those lines." *Id*. The court further stated:

> I do not find that disclosure of the C.I. is material to the stated defense that is allegedly going to be put forward in this case of mistaken identity. I find that the defendant has no evidence of mistaken identity. That the C.I.'s disclosure would bear upon other than speculative hope that the C.I. would identify someone else or refuse to testify or something along those lines.
>
> The [c]ourt in this matter has repeatedly asked for some offer of proof as to what evidence of mistaken identity exists and he received none.

*Id*. at 91-92. We agree with the trial court that Appellant failed to present evidence establishing that the identity of the CI was material to any defense he intended to rely upon, including that of mistaken identity. *Commonwealth v. Watson*, 69 A.3d 605, 609 (Pa. Super. 2013) (finding trial court did not abuse its discretion in denying motion for identification of the CI's identity where the defendant failed to present credible evidence of mistaken identity).

To the extent Appellant relies upon *Commonwealth v. Payne*, 656 A.2d 77 (Pa. 1994), and *Commonwealth v. Carter*, 233 A.2d 284 (Pa. 1967), in support of his argument that the trial court erred, we note that both cases involved a single occurrence or observation of the defendant by undercover officers. *Payne*, 656 A.2d at 78; *Carter*, 233 A.2d at 286, 287. In the instant case, the undercover officers who observed Appellant did so on multiple occasions, and their identification of Appellant was bolstered by the fact that additional officers were present and observed Appellant at the locations where the drug transactions occurred. *See Commonwealth v. Bing*, 713 A.2d 56, 59 (Pa. 1998) (finding "the fact that there were numerous

observations of the seller, although not legally determinative, weighs in favor of the Commonwealth's privilege.").

In a more recent case involving the identification of a confidential informant, our Supreme Court found that the trial court erred when it granted the defendant's motion to identify a confidential informant where the defendant failed to establish a material need for disclosure of the CI's identity. *Marsh*, 997 A.2d at 322. In that case, the CI informed police that the defendant was a large supplier of illegal drugs. *Id*. at 320. The CI described the defendant and ultimately accompanied an undercover officer to make a drug purchase from the defendant. *Id*. The defendant got into the back of the officer's car and removed four bags of cocaine from a bag he was holding. *Id*. The defendant was arrested almost immediately following the exchange, while he was still in the undercover officer's car. *Id*. The defendant filed a pretrial motion seeking disclosure of the identification of the CI because it was material to his defense of mistaken identity. *Id*. Despite the fact that the defendant was caught "red-handed," the trial court granted the motion.

Our Supreme Court ultimately found that the defendant failed to show that the identity of the informant was material to his defense and that the request was reasonable. The Court noted that the Commonwealth correctly pointed out that the defendant did not present any evidence in support of his motion; he simply made conclusory statements. *Marsh*, 997 A.2d at 322.

The Court further stated, "[A]llegations alone do not supplant the need to make an actual evidentiary showing." *Id*. The Court advised:

> There can be no ambiguity in this regard, and we reiterate here the bedrock principle that there is no single determinative factor in deciding whether disclosure of an informant's identity is required. Rather, the determination must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informants' testimony and other relevant factors.

*Id*. at 322-323.

In the instant case, as in *Marsh*, Appellant's conclusory statements failed to establish that the identity of the CI was material to his defense. Moreover, Appellant was observed on multiple occasions by multiple officers; thus, we discern no error or abuse of discretion on the part of the trial court in denying Appellant's motion to identify the CI.

In his second issue, Appellant asserts that the trial court erred when it denied his motion to sever charges. Appellant's Brief at 30. In support, Appellant argues the consolidation of the offenses unduly prejudiced Appellant, they would not have been admissible in a separate trial, and the evidence was not capable of separation by a jury to avoid confusion. *Id*.

"The determination of whether separate indictments should be consolidated for trial is within the sole discretion of the trial court[,] and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Boyle*, 733 A.2d 633, 635 (Pa. Super. 1999). Indeed:

> The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583. Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. ***Commonwealth v. Lauro****,* 819 A.2d 100, 107 (Pa. Super. 2003).

> [T]he "prejudice" of which Rule [583] speaks is not simply prejudice in the sense that [an] appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of **all** Commonwealth evidence. The prejudice of which Rule [583] speaks is, rather, that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence.

***Id****.* (emphasis in original) (quoting ***Commonwealth v. Collins****,* 550 Pa. 46, 703 A.2d 418, 423 (1997)). Moreover, "the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself." ***Id****.* (quoting ***Collins****,* 703 A.2d at 423).

Reading these rules together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine:
> [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other;
> [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative,
> [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

> ***Collins***, 703 A.2d at 422 (quoting ***Commonwealth v. Lark***, 518
> Pa. 290, 543 A.2d 491, 496–97 (1988)).

***Commonwealth v. Ferguson***, 107 A.3d 206, 210-211 (Pa. Super. 2015).

We also note that Appellant bears the burden of establishing prejudice. ***Id***.

at 210. "The general policy of the law is to encourage joinder of offenses and

consolidation of indictments when judicial economy can thereby be effected,

especially when the result will be to avoid the expensive and time consuming

duplication of evidence." ***Commonwealth v. Patterson***, 546 A.2d 596, 600

(Pa. 1988). Pursuant to Pa.R.Crim.P. 582:

> (1) Offenses charged in separate indictments or informations
> may be tried together if:
>
> (a) the evidence of each of the offenses would be
> admissible in a separate trial for the other and is
> capable of separation by the jury so that there is no
> danger of confusion; or
>
> (b) the offenses charged are based on the same act or
> transaction.

Pa.R.Crim.P. 582 (1)(a) and (b).

Appellant argues that trying his cases together amounted to an avenue

to "improperly admit prior bad acts evidence." Appellant's Brief at 30.

Appellant argues that he was unduly prejudiced because the jury "could not

avoid cumulating the evidence" and that the evidence improperly bolstered

the testimony of the police officers. ***Id***. at 32. Appellant asserts that separate

identifications on separate dates blurred into one identification of Appellant.

***Id***. at 33. Appellant further claims that the March 28th and May 31st buys

were not "inherently connected" to the May 4th and May 5th buys. *Id*. at 35.

Finally, Appellant avers that there was a risk of confusion to the jury due to

the number of cases and testifying officers, who had different involvement

and visibility. *Id*. at 36.

Instantly, Appellant was charged with four counts of PWID, four counts

of delivery of a controlled substance, and four counts of possession of a

controlled substance following four incidents, which occurred within less than

sixty days of one another. In his brief, Appellant admits that "[t]hough the

incidents may have had similarities on their face, those were merely

characteristics common to many drug busts." Appellant's Brief at 35. We

disagree with Appellant's characterization of the four incidents.

In *Commonwealth v. Boyle*, 733 A.2d 633 (Pa. Super. 1999), this

Court found that the trial court did not err in refusing to sever because the

following testimony revealed a common scheme

> in which a deal for a specified dollar amount of powder cocaine
> was set up by the CI using Appellant's coded page number and
> waiting for Appellant to call back. A meeting place was set to
> which the CI and the undercover agent drove in an unmarked
> vehicle and waited for Appellant, who on each occasion, working
> with a group of co-conspirators, quickly obtained the amount of
> cocaine. Appellant then delivered the drug to the CI or the
> undercover agent and was paid in cash. These multiple drug
> deliveries were clearly related and revealed a common plan
> through which Appellant could and did obtain and deliver cocaine
> when money was offered.

*Id* at 636-637. The Court found that the "the details of Appellant's

involvement in one transaction tends not to prove Appellant's propensity to

- 16 -

commit crimes, but rather the likelihood that he was involved in each transaction." *Id*. at 637. Ultimately, the Court concluded that the trial court did not err when it denied the defendant's motion to sever because "each delivery possessed a common scheme…." *Id*. We draw the same conclusion herein.

Indeed, a review of the record establishes that each delivery possessed a common scheme. The same CI contacted Appellant in each incident, and the parties agreed upon a location to exchange heroin for money. All of the buys happened within sixty days of one another, and they all occurred in the same area. In each exchange, Appellant provided stamp bags of heroin in exchange for funds. Moreover, the CI used the same telephone number to contact Appellant–412.612.0668–for the March 31, 2015, May 4, 2015, and May 5, 2015 buys. N.T. (Trial), 10/23/19, at 94; N.T. (Trial), 10/24/19, at 275-276. Further, testimony from the police officers involved in the May 4, 2015, May 5, 2015, and May 28, 2015 transactions establish that Appellant arrived to the drug buys in a silver Chevy automobile. N.T. (Trial), 10/23/19, at 142, 172; N.T. (Trial) 10/24/19, at 244.[3]

_____

[3] We also note that several of the detectives were involved in more than one of the exchanges–for example Officer Moore provided cover surveillance for the May 28, 2015 sale and was in the CI's vehicle when the May 4, 2015 and May 5, 2015 deals occurred. N.T. (Trial), 10/23/19, at 140, 146, 181. Similarly, Officer Granata was involved in both the March 31, 2015 and the May 4, 2015 buys, providing cover surveillance. N.T. (Trial), 10/24/19, at 219, 220-221. Chief Klein was involved in the May 4, 2015 and the May 5,
*(Footnote Continued Next Page)*

Appellant also avers that the evidence was not capable of separation by the jury. Appellant's Brief at 36. We do not agree. Each of the four transactions in this case was initiated by the CI. The CI and an undercover officer drove to a location and met with Appellant. Each transaction involved the delivery of distinct stamp bags of heroin–with different names or brands stamped on the bags. As in **Boyle**, where we found that the "testimony involved a limited number of actors and essentially the same conduct, and provided a pattern of facts to the jury which was not complex," there was no risk of confusing the jury. **See Boyle**, 733 A.2d at 637.

Finally, Appellant has failed to establish that he was prejudiced by the trial court's decision. Appellant argues that the joinder of cases allowed "highly prejudicial prior bad acts evidence" into a trial. Appellant's Brief at 35. He asserts that he was prejudiced by the separate identifications from separate days which blurred into a single identification of Appellant. **Id**. at 33. The actions of the jury, however, make clear that it was able to differentiate between the transactions, consider each charge separately, and not cumulate the evidence. **Commonwealth v. Dozzo**, 991 A.2d 898, 903 (Pa. Super. 2010) (where jury found defendant not guilty of several charges, it demonstrated the jury did not cumulate evidence and considered all of the charges). Indeed, the jury in this case found Appellant not guilty of any

---

2015 buys. **Id**. at 242. Finally, we note that Detective Farmerie was involved in the March 31, 2015 buy as well as the May 4, 2015 buy. **Id**. at 268, 271.

charges stemming from the May 4, 2015 buy. N.T. (Trial), 10/24/19, at 452-453; Criminal Information, 3/31/2017, at 4. Thus, "the presentation of the evidence, the court's jury instructions, and the jury verdict demonstrated that the jury was able to and did separate the evidence for each case when it rendered its verdict." **Dozzo**, 991 A.2d at 903 (citing Pa.R.Crim.P. 582; **Commonwealth v. Collins**, 703 A.2d 418 (Pa. 1997)). Appellant is due no relief on this issue.

In his final issue on appeal, Appellant argues that the trial court erred when it refused his motion for an adverse jury instruction based on the Commonwealth's refusal to make the CI available to the defense. Appellant's Brief at 37. We review a challenge to a jury instruction for an abuse of discretion or error of law. **Commonwealth v. Rush**, 162 A.3d 530, 540 (Pa. Super. 2017). Moreover, we note that the "trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." **Id**.

> Our Supreme Court has articulated what has come to be known as the "missing witness" adverse inference rule as follows:
>
>> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

*Commonwealth v. Manigault,* 501 Pa. 506, 510-11, 462 A.2d 239, 241 (1983) (quotations, citations and emphasis omitted). However, this Court has summarized the circumstances that preclude issuance of the instruction as follows:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

*Commonwealth v. Boyd*, 356 Pa.Super. 302, 308-09, 514 A.2d 623, 626 (1986) appeal denied, 515 Pa. 618, 531 A.2d 427 (1987) (Johnson, J., concurring) (citing *Commonwealth v. Harley*, 275 Pa.Super. 407, 413, 418 A.2d 1354, 1357 (1980)).

*Commonwealth v. Evans*, 664 A.2d 570, 573-574 (Pa. Super. 1995).

Appellant argues that the CI had special information that would not have been cumulative of other testimony because of his or her past relationship with Appellant, and because the CI was closest to Appellant during the drug buys. Appellant's Brief at 39. In support of his argument, Appellant relies upon *Evans*, 664 A.2d 570. *Evans*, however, is not instructive in this case as it involved a single interaction between the defendant and a police officer, whereas, the instant case involved several interactions with multiple police

officers. Moreover, the defendant in **Evans** did not file a motion seeking the identity of the CI, while in this case the trial court heard evidence and argument and determined that the Commonwealth did not have to identify the CI, as discussed *supra*.

In **Commonwealth v. Delligatti**, 538 A.2d 34, 39-40 (Pa. Super. 1988) this Court found no error on the part of the trial court when it denied the defendant's request for a missing-witness instruction. In that case, the defendant filed a motion seeking the disclosure of the identity of the CI, which the trial court denied. The appellant also argued the trial court erred in refusing to give a missing-witness instruction. **Id**. at 39-40. This Court found as follows:

> We conclude that the Commonwealth supplied the trial court with a satisfactory reason for not calling the informant to testify during trial. Namely, the informant's identity was confidential. It is obvious that, had the informant been called as a witness to testify, the Commonwealth's objective of protecting the informant's anonymity would have been stymied. Accordingly, we find no merit in Appellant's argument.

**Id**. at 40.

Here, the trial court heard argument and testimony on the identity of the CI and ultimately determined that the disclosure of the witness was not material to Appellant's defense. The court denied Appellant's motion to identify the CI. We agree with the Commonwealth's argument that if the trial judge had agreed to provide the missing-witness instruction, the Commonwealth would have been placed in the untenable position of being

"penalized for exercising its legitimate right to keep the identity of its informant confidential." Commonwealth's Brief at 25.

Finally, we note that at the hearing on the motion to disclose the identity of the CI, the trial court heard testimony regarding the Commonwealth's safety concerns for the CI in addition to the issues relating to materiality. N.T. (Motions Hearing), 5/11/18, at 79-90. During that portion of the hearing, Officer Donald Temple testified that he was concerned about the CI's safety. *Id*. at 80. The Commonwealth presented evidence of Appellant's prior arrests and/or convictions for intimidating a witness and terroristic threats as well as carrying a firearm without a license. *Id*. at 81-85. The trial court held, "I do find that the officer's concern for [the] safety of the confidential informant is a reasonable one. Most especially because of the nature of some of these convictions, not arrests, but convictions." *Id*. at 92-93. We discern no abuse of discretion in the trial court's determination. *See Boyle*, 733 A.2d at 639 (finding no error where trial court denied missing witness instruction where the Commonwealth posited the satisfactory explanation for non-production of a witness, including, *inter alia*, concerns for the CI's safety ); *see also Commonwealth v. Jones*, 637 A.2d 1001, 1006 (Pa. Super. 1994) (same). Appellant has failed to show the trial court erred when it denied his request for the missing witness jury instruction.

For all the foregoing reasons, the judgment of sentence is affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/20/2021